CALVIN BROACH, plaintiff in error, *vs.* IRENA S. BARFIELD *et al.*, defendants in error.

1. In 1874, there was no law in Georgia making usurious any agreement, written or verbal, for any rate of interest whatever.
2. An absolute deed to land, made in January, 1874, by a widower to two of his creditors, to secure his indebtedness by note to each of them, they giving him a bond for titles, conditioned to reconvey on payment of both notes, passed the legal title.
3. Such title was not divested by the subsequent voluntary bankruptcy of the grantor, and his consequent discharge from all his debts.
4. Nor was it divested by his causing the land to be set apart in bankruptcy as his homestead exemption, he being the head of a family of children.
5. Nor was it divested by the grantees' filing, in the bankrupt court, objections to the allowance of such exemption, nor by the pendency of such objections, nor by an adjudication adversely to the objectors, they not having proved their debts as claims against the bankrupt's estate.
6. Special pleas to an action of ejectment which present no sufficient defense, ought to be stricken.
7. To redeem land, held by absolute legal title as security for a debt, the debt must be paid or tendered; and, generally, a tender will be effective, though delayed till after the creditor has recovered possession of the premises by action.

Ejectment. Usury. Deed. Bankrupt. Homestead. Judgments. Pleadings. Tender. Debtor and creditor. Before Judge BARTLETT. Jones Superior Court. April Term, 1876.

Irena S. Barfield and Mary A. Turner brought ejectment to the October term, 1875, of Jones superior court, against Calvin Broach for certain land. The defendant pleaded, in substance, as follows:

1st. The general issue.

2d. The deed under which the plaintiffs claim title was dated January 23d, 1874, and was executed by the defendant to secure the payment of two notes, bearing the same date, and to become due twelve months thereafter. At the time the deed was delivered, plaintiffs executed their bond to defendant conditioned to make titles on the payment of the aforesaid notes. The deed and bond for titles constitute nothing but a mortgage. The title never was intended to pass. The value of the land is far in excess of the debt.

3d. The defendant had been adjudged to be a bankrupt prior to the commencement of this suit, and was discharged on November 30th, 1875. The debt due the plaintiffs was in existence at the time, and was provable in bankruptcy. He therefore pleads his discharge in bar of this suit.

4th. On February 20th, 1875, the land in controversy was set apart to the defendant as a homestead, by the assignee in bankruptcy. On March 4th thereafter, the plaintiffs appeared before the register in bankruptcy and filed exceptions to the setting apart of such homestead, which involved precisely the same questions as are now made in this case, and these exceptions were pending at the time of the commencement of this suit. Wherefore the defendant pleads the pendency of the case thus made before the register, in bar of this action.

5th. The plaintiffs appeared before the bankrupt court for the southern district of Georgia, and filed exceptions to the judgment of the *assignee* (?) setting the land apart as a homestead. A hearing was had before the register and the homestead approved, notwithstanding the objections. Subsequently the defendant was discharged, his homestead having been allowed. He therefore appends a transcript of the record of these proceedings and pleads the same in bar as *res adjudicata.*

6th. He agreed, verbally, to pay twelve and a half per cent. interest on the notes. This stipulation was not incorporated therein. He therefore pleads usury.

Upon demurrer, all of the aforesaid pleas were sticken except the first and last.

The evidence presented, in substance, the facts set forth in the second and last pleas. It was also shown that the defendant had no wife at the time of the execution of the aforesaid deed, though he had a family of children.

The jury found for the plaintiffs. The defendant moved for a new trial upon the following grounds:

1st. Because the verdict was contrary to the law and the evidence.

2d. Because the court erred in striking the defendant's pleas as above stated, and in holding that he could not set up his equitable defense without tendering the money to secure which the deed was executed.

3d. Because the court erred in charging that there was no usury law in Georgia when the deed was made, and therefore there could be no usury in the contract.

The motion was overruled, and the defendant excepted.

Lanier & Anderson; Hill & Harris, for plaintiff in error.

Poe, Lofton & Bartlett, by Smith & Jackson, for defendants.

Bleckley, Judge.

1. Georgia, for a brief period, tolerated free trade in money. While the act of 1873 (pam., p. 52,) was in force, conventional interest was unlimited. Any rate for which the parties might stipulate was allowable. It is true, that to make the contract obligatory beyond seven per cent., the promise, as to the excess, had to be in writing; but there was no prohibition upon parol promises. They were not treated as tainted or corrupt, but simply as not obligatory. It was no more illegal to make them than to make a will without three witnesses, or to make a promissory note without any consideration, or to make the promise of a future gift. They were impotent, but harmless—null, but not noxious. Wanting in the prescribed

authentication by writing, they were as if they had never been.   To the legal idea of usury the element of invalidity is not sufficient; there must be the further element of illegality. Usury is not a neutral, but an enemy.   The act above referred to repealed, expressly, all laws upon the subject of usury.

2. In the light of the Code, section 1969, of 54 *Georgia Reports*, 45, and of 55 *Ibid.*, 650, it can scarcely be considered an open question that an absolute deed passing the legal title, may be made as security for a debt.   The point now raised is that the debtor's wife did not sign the deed or consent to it.   But he had no wife.   Surely that is a sufficient reason for the omission.

3. The adjudications above referred to, as well as that found in 55 *Georgia Reports*, 412, recognize the sufficiency of such a deed to maintain ejectment.   If sufficient before bankruptcy, there is no reason why it should not be afterwards. Bankruptcy does not divest any person of title but the bankrupt himself.   It does not strip title off of other people and clothe him with it.   It is, as to debtors, a means of surrendering property, not of acquiring it.   It will not even remove incumbrances.   Mere liens will adhere to the bankrupt's effects, unless creditors choose to surrender them.   Discharge from the debt does not work extinction of a lien. How, then, can it extinguish an outstanding legal title?

4. That the land was set apart in bankruptcy to the bankrupt as his homestead exemption, is equally unavailing to invigorate his title.   He acquired no new or additional property in the land by claiming it as exempt and having it allowed to him.   He simply continued to hold as he had held before : See 55 *Georgia Reports*, 579.   His interest in the land was the right to have a conveyance, according to the bond for titles, upon paying what he had bound himself to pay.   Cut down his interest to its real proportions, and there is no conflict between the disposition made of the land in bankruptcy, and the title to it now asserted by the plaintiffs in ejectment. The plaintiffs challenge the bankrupt's title, not his exemp-

Broach *vs.* Barfield *et al.*

tion. They grant that all he has is exempt, but they make the troublesome question that, as against them, the land does not belong to him.

5. That the bankrupt held a bond for titles and claimed the land as his homestead exemption, furnished a sufficient basis for all that was done in reference to the land by the court of bankruptcy. Whether the objectors had the title paramount or not, they had no footing in that court, for they had not proved any claim against the bankrupt's estate. They, however, did not lose their title by appearing there and interposing objections, whether the objections were overruled or left undisposed of. What they did, was simply idle, for whether the exemption was worth anything or not, the bankrupt had a right to have it recognized by that court. To recognize the exemption and overrule objections to it, was to adjudge nothing but that the land ought to be left as it was and not be brought in as assets for administration in bankruptcy. What else is signified by exemption in bankruptcy?

6. The principles of this opinion, thus far, will be found comprehensive enough to dispose of all the special pleas, none of which amounted to a defense to the action, and all of which should, therefore, have been stricken. · To try the truth of an insufficient plea is a waste of time.

7. The defendant could have made out a good defense to the action by paying or tendering the money due on his notes. That would have made his equity complete, but without that it was incomplete. We see no obstacle to his becoming entitled to re-enter, even after eviction under the judgment, by paying or making a tender of the money. Let him do equity and have equity.

Judgment affirmed.