MARY E. RALEY *et al.*, plaintiffs in errror, *vs.* JOHN B. Ross *et al.*, defendants in errror.

[JACKSON, J., having been of counsel, did not preside in this case. It was argued at the last term and decision reversed.]

1. If a person having already an absolute deed for land, takes from the maker of the deed a bond for titles embracing the same land with other lands, giving his notes for the purchase money of the whole, and dies while in possesssion under the bond, having paid no part of the purchase money, the bond reciting that the obligor had *agreed to sell* to the obligee all the lands for one round price, and binding the obligor, upon payment thereof, to convey all the lands to the obligee or to such persons as he should appoint or direct, the presumption is, that the title to that part of the premises embraced in the deed became revested in the obligor at or before the making of bond. As the obligee was estopped at the time of his death from denying title in the obligor at the date of the bond, his widow, after his death, is estopped also, and has no right to dower in any part of the premises.

2. The widow of the obligee in a bond for titles (the purchase money being unpaid) having taken a homestead in the land for the benefit of herself and minor children, a court of equity, in decreeing a sale of the whole land embraced in the bond, upon a bill by the administrator to marshal assets, should recognize the homestead right as adhering to the surplus produced by the sale, over and above a sufficient amount to discharge the purchase money ; and should, in the decree, provide for investing such surplus, or a part thereof not exceeding the amount limited by the constitution, in a suitable homestead of realty.

3. Where a creditor took out a policy of insurance upon the life of his debtor, and held it as collateral security, and where the evidence tends strongly to show that, in paying the premiums, he advanced the money as matter of account between himself and his debtor, the net amount realized on the policy by the creditor after the debtor's death, should be applied as a credit on the debt.

4. Where a case, as a whole, is referred to an auditor by consent of parties, and, on exceptions to his report, the judge, by like consent, adjudicates upon the exceptions without a jury, the presumption is

strongly in favor of the correctness of the report in all points as to which both referees are agreed.

Dower.   Estoppel.   Equity.   Homestead.   Collateral security.   Insurance.   Auditor.   Before Judge CLARK. Lee Superior Court.   November Term, 1876.

Gilbert M. Stokes, as administrator of John Raley, deceased, filed his bill against Mary E. Raley, the widow of his intestate, John B. Ross, and other creditors, to marshal the assets of such estate.   Answers and cross-bills were filed. The case was submitted to George Kimbrough, Esq., as auditor, who made, in substance, the following report :

I find that Gilbert M. Stokes, the administrator, has received from all sources, $10,701.44, with which he stands properly charged.   Against this he presents a bill for expenses of administration, amounting to $11,002.41, all of which is allowed except the charges made prior to February 26th, 1873, amounting to $1,074.88.   The items constituting this sum were charges against the intestate during his life, and, therefore, not properly a part of the expenses of administration.   Also certain items of interest, express charges, etc., are excluded.   The whole amount of these deductions is $1,275.46, leaving the sum paid out by him $9726.49, which shows in his hands, for distribution, a balance of $962.49.   This is distributed as follows :

1st. Auditor's fee ... ... .................... .............$150.00
    Clerk's fee.......... .......... ................ ... ....   50.00
    Advertising auditor's meeting.... ...... ... .. .......   5.00
    All costs of this litigation, including costs of court of ordin-
    ary....................... .... .. ...................
    Extra compensation to administrator.................... 300.00
2d. To A. B. Kennedy for rent. ............................. 300.00
    To A. B. Kennedy for interest........................... 24 50

The remainder, if any, to be distributed according to the following priorities :

1st. To payment of Geo. Hay's *fi. fa., vs.* John Raley, principal, $ 51.42
    To payment of Geo. Hay's *fi. fa., vs.* John Raley, interest.. 10.77
    To payment of Geo. Hay's *fi fa., vs.* John Raley, costs..... 19.60

2d.  Laborers' liens, to-wit :

Jim Harris, principal and interest.......................$136.29

Charles Jones, principal and interest.. ..............  ...   51.37

Jim Whitaker, principal and interest ...............  ....   35.43

3d.  The factor's lien of G. M. Stokes, to the amount of........ 408.86

The factor's lien of G. M. Stokes, interest thereon........  57.24

4th.  Promissory notes.

5th.  Open accounts.

The case made by the answer and cross-bill of John B. Ross, amounts to this : Ross holds eight notes against the estate of Raley, aggregating $30,000.00, which fall due annually, the first on December 1, 1873, and the last on December 1, 1880.   He claims that these notes were given for the purchase of the Chehaw and Jordan plantations, and also for a large amount of personal ·property sold to the intestate at the same time and upon like conditions, that is to say, the title to the same to become perfect upon the payment of the aforesaid notes.   At the time these notes were made, Ross delivered to Raley his bond for title to said plantations, in which these notes are particularly mentioned, and therein declared to be in consideration of said plantations.   This bond was received by Raley, and by him caused to be recorded in the clerk's office of the superior court of Lee county.  No personal property is mentioned therein.  No fraud, accident or mistake is set up by him, Ross, to show why these notes were simply declared to be in consideration of the land.  He only asserts that he and Raley were old friends, and that they did not deem it necessary.  This is insufficient, and the bond being cotemporaneous with the notes, must be held to give their true history.  That Raley must have understood that he was getting an absolute title to whatever personalty he may have bought from Ross, is evident from the fact that about the same time the above papers were executed, Ross, through Raley, obtained a policy of insurance upon the life of the latter, as a collateral security for the payment of the notes, for a sum nearly equal to the alleged value of the personalty.  This view of the case is sustained by the fact that the per-

sonal property was of an exceedingly perishable, nature, a large portion of which would necessarily be consumed or destroyed before the first notes would fall due. My opinion of the law and the evidence is, that Ross is entitled to, retain the money collected by him upon the life policy, to-wit: the sum of $9,626.90, to go as a payment upon the notes; that said notes be reduced to their present cash value, which I find to be, after deducting policy, $15,787.03 ; that he have a decree for this amount, under which the lands should be sold on the 1st of January, 1876, upon his filing a deed in terms of the law ; that the proceeds of this sale be appropriated to the payment of said debt, and the surplus, if any, be turned over to the administrator, or such person as the chancellor may direct, to be applied as follows : 1st. To the extent of $2,000.00 in specie, or its equivalent in currency, to be invested in a homestead for the widow and children of said Raley.    2d. To be distributed to the debts mentioned in this report according to their priorities.

Mrs. Raley, by her cross-bill, claims that she is entitled to homestead and dower in that portion of the lands bought or bargained for by Raley from Ross, and known as the Jordan place.    She claims that her husband died seized and possessed of one undivided half interest in the same.    In support of this claim, a deed from Ross to Raley, conveying a half interest in said place, is introduced.    This instrument, never recorded, bears date July 1st, 1870.    Ross replies to this by introducing his bond for title to Raley, covering the identical land, and also the plantation known as the Chehaw place.    This bond is for $50,000.00, and is subsequent to the deed dated November 29th, 1872, and was, by order of Raley, recorded in the clerk's office of the superior court.    Ross charges that at the time this bond was given, and the contract therein mentioned made, that the former trade, as to the half interest in the Jordan place covered by said deed, was annulled, and a certain note for $12.500.00, which he held against Raley for such half in-

Raley *et al. vs.* Ross *et al.*

terest, was agreed to be delivered up to him and the said deed was to be delivered to said Ross. I think, under the facts and circumstances of the case, that the equity is with Ross, and that specific performance of this contract should be enforced. I hold that Mrs. Raley is not entitled to dower in these lands, and that said note and deed be delivered up to be canceled. I also hold that Mrs. Raley is not entitled to a homestead in said lands, and that the homestead allowed her by the ordinary is void as to Ross. As to her claim for additional allowance for year's support, I think that already allowed, $1,500.00, liberal, and I decline to order any additional sum paid to her on this account. * *

As to the claim of A. B. Kennedy for rent, the proof shows that a sufficient amount of the crops raised upon the rented premises went into the hands of the administrator to pay the same, and it has been allowed under its priority.

*    *    *    *    *    *    *    *    *

Porter, and other creditors, interposed the following exceptions to the auditor's report :

1. That the auditor erred in not allowing the amount of Porter's account for the year 1873, as a lien upon the crops of that year, as the evidence disclosed that the goods were furnished for the benefit and use of the laborers under an agreement made with the intestate before his death, and as such advances extinguished the lien of the laborers, and in equity should therefore have been allowed him.

2. That the auditor has erred in allowing, as expenses of administration, the sum of $9,726.49, as the correct amount would be $4,552.23, including burial expenses and allowance to the widow and family. That there ought to be deducted from the expense account set out $1,499.56, which had been incurred in conducting the planting interest prior to the administration; also, one-half of the fee of Lyons & Hawkins, $300.00, as their services were mostly for the private benefit of said administrator as a creditor. They further insist, that just before the death of Raley, he had contracted with said Stokes, as his factor for the year 1873, and given him a

lien on his crops of that year for $3,850.00 ; that this amount ought to be struck from the expense account, and Stokes take his position as a creditor with his lien upon the crop.

3. That the auditor erred in reporting that there was left in the hands of said administrator, for distribution, only $962.49 ; they insist that there is now in his hands $6,401.01.

4. That the auditor erred in failing to separate the funds arising from the crops from that derived from the sale of the personal property and from rents, as there were special liens against the one which did not exist agaist the other ; that the evidence discloses that the crops produced $6,546.30, and the sale of personalty, rents, etc., $4,687.79. They insist that the expenses of administration ought not to be deducted from the aggregate of these two amounts ; that these two funds ought to contribute *pro rata* to this charge, to-wit : the crop fund of $6,546.30, its *pro rata* of $4,833.80 (expenses of administration) $2,855.97 ; the other fund, $4,687.79, its *pro rata*, $1,979.17 ; which would leave of the crop fund for distribution, $3,690.39, and of the other, $2,710.62 ; in all, $6,401.01.

5. That the auditor erred in allowing the administrator extra compensation, $300.00 ; also additional attorneys' fees, $150.00.

Mary E. Raley, the widow of the intestate, excepted to the report upon the following grounds :

1. Because the auditor erred in admitting the testimony of John B. Ross in relation to the land trade between him and Raley, over her objection that he was an incompetent witness as Raley was dead.

2. Because the auditor erred in deciding that at the time of the execution of the bond for title from Ross to Raley, the deed made to the undivided half of the Jordan place was agreed to be delivered up by the latter to the former, when there was no such evidence before him, except the illegal testimony of Ross, objected to upon the ground above stated.

3. Because said auditor erred in deciding that the eight notes of Raley, held by Ross, ought to be reduced to their cash value by discounting them at the rate of seven per ct. per annum, and from the balance deducted the sum of $9,626.90, the money received on the life policy, and that Ross have a decree for $15,787.03, and the sale of the lands to pay the same. She insists that said auditor should have apportioned the contract for the purchase of the plantations from Ross, and the notes given by Raley for the same, between the two places, and should have reduced the amounts thus ascertained to their respective cash value, by rebating the same at the per cent. which actually entered into said contract and notes. She further insists that said auditor should have applid the $9,626.90 received by Ross upon said contract and notes, and in part performance thereof, to the payment of the notes for the Jordan place, reduced to their cash value by rebating them at the rate of one hundred per cent, which actually entered into said notes, as the evidence disclosed that although the contract between Ross and Raley was on eight years time, yet the former, within a few months after the making of it, and before either note was due, received $9,626.90, on the same as in part payment and in part performance of the contract. That Ross holds this money and claims all the benefit of such part performance of the contract of sale, and that the failure to fully perform on the part of Raley is attributable to no fault of his, but to the act of God. That the latter failed to get the time he had contracted for by said Ross' thus obtaining possession of the aforesaid fund, and holding it when money in the markets of the state was worth two and two and a half per cent. per month. That the evidence disclosed that the cash value of the Jordan place was from $3.00 to $5.00 per acre, and of the Chehaw place, from $2.00 to $3.00 per acre, when the contract of sale was made, and that Raley agreed to give $30,000.00, on eight years time, for property the cash value of which was between $12,000.00 and $15,000.00; also that the difference made in Lee county between land trades for

cash and on time was at least one hundred per cent. against the latter. That a calculation made upon this basis would demonstrate that Ross has received money more than sufficient to pay him for the Jordan place.

4. Because said auditor erred in deciding that Ross is entitled to a decree for $15,789.13, and for a sale of the lands on January 1st, 1876, to pay the same, as, by the application of said insurance fund made by the auditor, the two first notes are fully paid, and the third, due December 1st, 1875, is also paid except $600.00 or $700.00, and thus there has been no failure by Raley to perform his contract to the letter; and without such failure Ross is entitled to no such judgment or decree.

5. Because said auditor erred in deciding that this defendant, as the widow of Raley, was not entitled to partition of the Jordan place and dower therein, when the evidence disclosed that Raley died seized and possessed of the undivided half of the lands comprising the same.

6. Because the auditor erred in holding that the homestead granted by the ordinary of Lee county to this defendant and her two minor children, in the lands of the Jordan place, was null and void as to said Ross, as, under the law, said homestead is good and valid against him and all others, until he can, upon judgment obtained for due and unpaid purchase money, enforce his right against the same.

George Hays filed the following objection to the report :

Because said auditor erred in deciding that the rent claim, under the facts and evidence before him, of Kennedy, for $324.50, having a lien upon a limited portion of the effects of Raley, was entitled to priority over his judgment, which bound all of his property.

Jim Whitaker, Charles Jones and Sol Jones, excepted upon the following grounds :

1. Because the auditor erred in deciding that the amounts which they bought from Thomas F. Porter went in part performance of Raley's contract with them, thus reducing their respective claims against Raley, the evidence disclos-

ing that Porter was not the agent of Raley or of his administrator, or substituted by consent for either of them.

2.  Because he erred in refusing to allow the claim of Sol Jones, the evidence disclosing that the estate of Raley is indebted to him as a laborer the amount he claimed.

As illustrating the exceptions the following account was attached thereto :

| | | | |
|---|---:|---:|---:|
| Amount of Stokes' account of expenses of administration, without commissions.......... | | | $10,502 41 |
| From which must be deducted amount of account at date of administration, March 17, '73. | $ 1,272 | 51 | |
| From account Chehaw place... ............... | 227 | 95 | |
| One-half Lyon & Hawkins' fee, $600.......... | 300 | 00 | |
| Items of account not for estate.... ........... | 44 | 10 | |
| Illegal interest charged........ ............... | 250 | 67 | |
| Illegal interest charged, Chehaw account...... | 5 | 85 | |
| Amount Raley's two drafts and liens.......... | 3,850 | 00 | |
| Balance as expenses of administration ........ | 4,552 | 23 | |
| | $10,502 41 | —$10,502 41 | |
| Stokes received from cotton crops of 1873..... . | | $ 5,070 00 | |
| Stokes received from sale of personalty, Jan. 13, 1874 ................................ . | | 5,078 56 | |
| Nine months interest to Oct. 1st, 1874, when purchase money became due at 1½ per cent per month.................................. | | 685 53 | |
| Stokes received from rent of lands, 1874....... | | 400 00 | |
| Aggregate .... .. ......... ....... ........ | | $11,234 09 | |
| Less expenses of administration...............$ | 4,552 | 23 | |
| Commissions on $11,234 09............. ..... | 280 | 85 | |
| Balance for distribution...................... | 6,401 | 01 | |
| | $11,234 09 | —$11,234 09 | |

## Proceeds of crops and sale of personalty separated :

| | | |
|---|---|---:|
| Received from sale of cotton crop, 1873 ...... | · | $ 5,070 00 |
| Received from sale of corn, fodder and cotton seed, January 13, 1874........ .. .... ..... | | 1,300 71 |
| Received from interest on $1,300.00, 9 months, at 1½ per cent............................. | | 175 59 |
| Whole amount received from crops......... | | $ 6,546 30 |

| | | |
|---|---:|---:|
| Sale of personalty, not crops, January 13, 1874. | $ 3,777 85 | |
| Nine months interest on $3,777.85, at 1½ per cent. | 509 94 | |
| From rent of land, 1874............ .......... | 400 00 | |
| | $ 4,687 79—$ 4,687 79 | |

Receipts....... ...... ............ ........ $11,234 09

(These are separated, because there are liens on the crops and mortgages on other personalty.)

| | | |
|---|---:|---:|
| Receipts from crops  ... ...... .............. | | $ 6,546 30 |
| Less expenses adm'r actually paid out of this .. | $ 4,832 08 | |
| Balance from crops for distribution ........... | 1,713 22 | |
| | $ 6,546 30—$ 6,546 30 | |

Equality is equity. Divide expenses between these funds *pro rata:*

| | | |
|---|---:|---:|
| Expenses of administration.... ............. | | $ 4,833 08 |
| Of which, proceeds rent and sale of personalty | | |
| ($4,687.79) pays.......................... | $ 1,977 17 | |
| Of which, proceeds sale of crops ($6,546.30) pays | 2,855 91 | |
| | $ 4,833 05—$ 4,833 05 | |
| Balance left for distribution after deducting expenses.......... .................. ..... | $ 6,401 01 | |
| From crops, $6,546.30 — $2,855.91 ..... .... | 3,690 39 | |
| From personalty and rent, $4,687.79 — $1,977.17 | 2,710 62 | |
| | $ 6,401 01—$ 6,401 01 | |

Proceeds of crops for distribution according to
   priority  ......................... ........ $ 3,690 39
   Kennedy, lien for rent in full.
   Jim Harris, lien for labor in full.
   Charles Jones, lien for labor in full.
   Sol Jones, lien for labor in full.
   Jim Whitaker, lien for labor in full.
   Stokes, merchant's lien, or
   Hardeman & Sparks, factors' lien.
Proceeds of sale of personalty and rent for distribution....:...... ..................... $ 2,710 62
   George Hays' execution in full.
   Hardeman & Sparks' purchase money lien in
     full.
Liquidated demands *pro rata.*

Ross excepted to the report, as follows:

Because the auditor erred in finding that the proceeds of

the policy of life insurance should go as a payment upon said notes, whereas said Ross claims that he is entitled to hold said proceeds absolutely, and not as a collateral or indemnity for the payment of the notes.

The case thus made, with the evidence reported by the auditor, was submitted to the chancellor without the intervention of a jury. It was agreed that Fred H. West testified, though not so set forth in the brief of evidence, that Ross said, in the conversation referred to in his testimony, that the insurance on Raley's life was taken as collateral security for his debt against him. It was also admitted that Stokes was appointed temporary administrator on the 17th of March, 1873, by the ordinary of Lee county.

The chancellor decreed as follows:

1. That the report be affirmed, and all the exceptions thereto overruled, except as follows: that the auditor erred in crediting the notes to Ross for the purchase of the property in question with the amount collected on the life policy, which money, it is now decreed, was in no sense the property of Raley's estate, but belonged to Ross, and that said notes stand wholly unpaid as to that money.

2. As the time appointed by the auditor for the sale of the lands has passed, it is decreed that George W. Warwick, Esq., be appointed as a commissioner and an officer of the court, to sell the same according to the law applicable to sheriffs' sales, the terms thereof to be reported at the next ensuing term of the court, subject to the approval or rejection of the chancellor. The proceeds of said sale to be paid towards the discharge of the principal and interest then ascertained to be due on said notes, after a rebate of interest at the rate of seven per cent. per annum on such as are not then due. If the proceeds are more than sufficient for this purpose, then the surplus is to go as provided in the auditor's report except that no part is to be used or set apart as a homestead as therein allowed.

3. It is further decreed, that the portion of the report

allowing a homestead to be purchased with said surplus, if any, be set aside.

4. It is further ordered, that the claim of J. B. Ross be charged with a *pro rata* share of the costs of the said suit and fees of the auditor, but not for any fees of complainant's solicitors; the fees of the commissioner and the expenses of the sale to be passed on by the chancellor on his filing his report.

To this decree Mary E. Raley excepted, upon the following grounds:

1. Because said chancellor erred in overruling each and all of the exceptions filed by her to the auditor's report.

2. Because he erred in sustaining the exception thereto, filed by Ross, as to the disposition of the proceeds of the life insurance policy.

3. Because he erred in decreeing a sale of all of the lands described in the report, for the payment of the Ross notes, when thereby her rights under the homestead granted her by the ordinary of Lee county would be defeated, and for the payment of notes not due at the time this suit was commenced, and four of which are not now due.

4. Because said chancellor erred in the mode designated by him for arriving at the amount to be paid in satisfaction of the Ross notes out of the proceeds of the sale of the lands.

5. Because he erred in decreeing "that the part of the auditor's report allowing a part of the said surplus to be invested in a homestead for the family of John Raley, deceased, be disallowed and set aside," and "if more than sufficient, then the surplus to go as provided for in the auditor's report, except that no part is to be used or set apart as a homestead as therein allowed," there being no exception to the report in relation thereto by any of the parties interested in said case.

6. Because the decree is contrary to the evidence and the law.

George Hays and other creditors excepted upon the following grounds:

1. Because the chancellor erred in overruling each and all of the exceptions filed by them together and individually to the auditor's report.

2. Because he erred in allowing by his said decree items of account as expenses of administration to Stokes, before even temporary letters were granted to him.

3. Because he erred in allowing as expenses of administration, the sum of $9,726.49, which ought to have been reduced by deducting therefrom the several sums specified in their exceptions, to $4,552.23.

4. Because the decree is contrary to law, evidence and equity.

Error was assigned accordingly.

FRED. H. WEST, by R. N. ELY, for plaintiffs in error.

W. A. HAWKINS; LANIER & ANDERSON, HILL & HARRIS, for defendants.

BLECKLEY, Judge.

1. Raley died having both a deed from Ross, conveying to him certain lands in fee simple, and a bond for titles, of subsequent date, covering the same lands and others, with the purchase money of the whole unpaid. He had possession of the whole under the bond, and this being so, his holding was not adverse to Ross. 12 *Ga.*, 450; 14 *Ib.*, 70; 17 *Ib.*, 600. The presumption is, that in some proper manner, by rescision or otherwise, the title became revested in Ross at or before the execution of the bond. Only on the basis of such a presumption, no fraud or mistake being alleged, can the existence of the bond and the fact of possession under it, be accounted for. As matters stood at the death of Raley, he was estopped from denying title in Ross, and from asserting title, through the deed, in himself. He

was not "*seized* and possessed" of the land at the time of his death, (Code, §1763), and therefore no right of dower in his widow attached. In respect to the right of dower as now regulated by the Code, seizure of the husband at any time during the coverture (unless of lands obtained in right of the wife) is not sufficient; there must be seizure at the time of his death. The prior law was somewhat different. 28 *Ga.*, 478. In the present case, the estoppel by which the husband was bound, operates with equal force upon his widow, (compare 10 *Ga.*, 321; 55 *Ib.*, 613,) and her claim for dower is inadmissible. The purchase money was not paid, even in part, while the husband was in life. But had it been partly paid, she would not have been dowable. 15 *Ga.*, 100.

2. Homestead having been set apart in this land, after the death of Raley, for the benefit of his widow and minor children, the same, though the land was held under bond for titles only, with the purchase money unpaid, was protected against all claims upon the estate which the record discloses, except the vendor's claim for purchase money. Though the holder of a bond for titles is without legal title, he is not without some sort of interest in the land, and upon that interest the homestead right may be made to attach. 57 *Ga.*, 601; 59 *Ib.*, 507. Of course, it cannot attach so as not to be subordinate to the legal title in the vendor, and to whatever else would, in an ordinary case, prevail over the homestead right. Nor, in the case of the holder's death, as in the present instance, can the personal effects, (no further at least than the holder may, in his life-time, have directed their application), be withdrawn from general creditors, and applied to the debt for purchase money of the land, with a view to relieve the homestead. But when the land, as a whole, has paid its own purchase money, or so much thereof as the deceased left unprovided for by some special arrangement, there appears to be no good reason why the homestead, or whatever part of it may be spared, should not be recognized and protected. In the present

instance, it seems altogether practicable for a court of equity, upon such a bill as it has before it, to direct the investment of any surplus which the land, when sold, may produce, in a suitable homestead of realty. This investment, when made, will represent the original homestead estate as disincumbered by the then extinct claim for purchase money. See 25 *Ga.*, 223; 23 *Ib.*, 393. It may be added, that the whole surplus is not to be so invested, should it be in excess of the amount to which a homestead of realty is limited by the constitution, but only a part reaching up to that limit.

3. There was evidence before the auditor which authorized his conclusion that the net proceeds of the policy of insurance taken out by Ross on Raley's life, ought to be credited on the notes held by Ross for the purchase money of the land. That evidence was: first, the testimony of F. H. West, Esq., that Ross said the policy was taken as collateral security for the debt; secondly, the testimony of the insurance agent, Monroe, that he was informed by both Ross and Raley that the latter was indebted to the former, and that the policy was taken out to secure the debt; and, thirdly, a writing by Ross himself, made after the death of Raley, and after the policy was collected from the insurance company, in which writing he sets forth the proceeds of the policy as matter of account between Raley's estate and himself. Though Ross paid the premiums, he probably did so on the credit of Raley, and hence the written statement. In that statement, he takes credit, as against Raley's estate, for all his advances and expenses, reducing the net proceeds of the policy accordingly. We think with the auditor, that these net proceeds are applicable to the debt, and that only the balance of the debt is a charge upon the land.

4. As to the various minor points, in all of which both the auditor and the chancellor concurred, the presumption is strongly in favor of the report, and we find no positive error. Some of these minor questions will now be noticed briefly.

The plaintiffs in error, besides Mrs. Raley, are Deas, a

creditor by note ; Hays, a creditor by general judgment, and Harris, Whitaker, Charles Jones and Sol Jones, laborers claiming, each, a laborer's lien. Porter, a creditor, and Hardeman & Sparks, also creditors, acquiesced in the judgment overruling their exceptions to the auditor's report, and did not become parties to the bill of exceptions.

It is contended that the general judgment had priority of a claim for rent, which latter was held by the auditor and the court to outrank the former as to the crop made on the rented land. Raley died after the act of February 24, 1873, (Code, §1977), which act gives to the landlord a special lien on the crop, irrespective of the levy of a distress warrant. The crop was sufficient in value to pay the rent, and having been appropriated by the administrator to the use of the estate in the payment of expenses, the lien was transferred by operation of law to the general fund in his hands, by way of subrogation.

The laborers were paid certain amounts by Porter after Raley's death. They complained that these amounts were not allowed them as if still unpaid, but were deducted from their claims against the estate. They say Porter did not pay by order of the administrator, and, therefore, that the administrator was entitled to no credit. But the administrator, by taking credit, ratified the payments which Porter made, and this he had a right to do. Porter has a claim upon the estate for his advances, and the auditor allowed it as an account, but with no priority. This may have been injurious to Porter, but he has submitted to it, and if he is satisfied, the laborers who received his money or goods, ought to be. Sol Jones complains further, that his claim was not allowed, even as to the balance. If he had a lien *fi. fa.*, it does not appear in the record, although there is a statement in the brief of evidence that such a *fi. fa.* was presented. There was probably some entry on the *fi. fa.*, or some defect in it, which caused the auditor and chancellor to disallow it. Why that *fi. fa.* was left out of the record, and the others not, is unexplained. If there was a

balance really due Sol Jones, and by mistake or over-
sight it was left out of the auditor's report, the court might
even yet correct the report, and ought to do so.

Without further elaboration in detail, the judgment of
this court is as follows : " That the judgment of the court
below be reversed as to that part thereof which overrules
the auditor's report in respect to the application of the net
proceeds of the policy of insurance ; and also as to that
part thereof which overrules the auditor's report in respect
to laying out the surplus proceeds of the land in the pur-
chase of other land as a homestead.   Let the decree be modi-
fied accordingly.   And if there be a mistake or oversight
in rejecting the claim  of Sol Jones as a laborer's lien,
ranking with the other  liens of the same class, let that be
corrected also."

Judgment reversed.