## HINES *vs.* RUTHERFORD, executor.

1. A suit brought by one as heir at law may be amended so as to become a suit by him as executor.

(*a.*) That there are other heirs makes no difference; the executor represents all parties in interest.

2. Such an amendment relates back to the filing of the original suit, and if the original action was not barred, the amendment will not be barred.

3. Where one holding land permissively under bond for titles conveyed it absolutely (the vendee taking possession), and subsequently rebought from his vendee and re-sold to another vendee, the adverse possession was broken, and the possession of the first and last vendees could not be tacked so as to make a good prescriptive title against the original holder of the title.

(*a.*) It makes no difference that the first vendee remained in actual possession from the time of his re-conveyance until the second vendee took possession, he having done so not under claim of right in himself but under his vendor to whom he had re-conveyed.

4. That a vendor who has given bond for titles has sued and recovered a judgment for the balance of the purchase money, will not bar a subsequent suit in ejectment for the land. He is not compelled to file a deed and levy on the land.

5. Is one whose vendor has only a bond for titles to land, and who makes no effort whatever to discover the nature of his title, entitled to equitable protection as a *bona fide* purchaser? *Quære.*

Ejectment. Amendment. Administrators and Executors. Prescription. Actions. Vendor and Purchasers. Title. Before Judge FLEMING. Dougherty Superior Court. April Term, 1881.

Samuel Rutherford made his bond for titles, without any date, to Eubanks Tompkins, conditioned in the sum of nine thousand dollars to make him titles to lots of land numbers 174, 187 and 214, in second district of Dougherty county, Georgia, when he should pay his two notes for $4,500.00 each, one due the 25th of December, 1860, and the other on the 25th of December, 1861. Tompkins went into possession of the land in 1859, and soon afterwards sold it to Jones, who took possession of it in January, 1860, under a deed, and remained in possession until January, 1864, when he deeded the land back to Tompkins, and Tompkins sold it to R. K. Hines, and Hines took possession of it directly from Jones. Tompkins never was in actual possession since 1859, though he held the title from Jones for a short time, the latter retaining possession.

Samuel Rutherford made his will on the 7th of March, 1866, appointing Williams Rutherford, his son, his executor. He gave special bequests to his three children, Williams, Eliza and Mary, of negroes, etc., all being personalty, and of the residue of his estate he gave two-thirds to Williams and one-third to Mary. Samuel Rutherford afterwards died.

On the twenty-first day of September, 1866, Williams Rutherford, as executor of Samuel Rutherford, deceased, brought his action of complaint against Tompkins upon

the last of the notes due, under the bond for titles, to-wit: One note for $4,500.00, due December 25th, 1861, and in December, 1868, obtained a judgment thereon.

In 1869, a declaration in ejectment, with one demise in favor of Williams Rutherford, heir at law, was filed against Richard K. Hines for the three lots of land mentioned in the bond for titles from Samuel Rutherford to Eubanks Tompkins. By amendment, in 1879, the suit was so altered as to be a suit by Rutherford as executor. This action was tried the second time at the April term, 1881. The plaintiff opened his case, and introduced the certified copy of the will of Samuel Rutherford, letters testamentary to him as executor, bond for titles of Samuel Rutherford to Eubanks Tompkins, and deed from said Tompkins to R. K. Hines for the three lots mentioned in the bond (made under power of attorney from Tompkins to D. A. Vason), dated twenty-third day of January, 1864 ; also the declaration and judgment and *fi. fa. vs.* Tompkins.

Defendant's counsel moved to rule out the amendment to plaintiff's declaration, it being originally on the demise of Williams Rutherford, heir at law, and the amendment being " Williams Rutherford as executor." Defendant's counsel proposing to show that he was not the sole heir at law, but he had two sisters, equal heirs at law, the amendment bringing in new rights and new parties. The motion was overruled and defendant excepted.

Defendant then moved a non-suit, because it appeared from the evidence and was admitted that Hines' possession began in 1864, and the amendment not being made bringing in Williams Rutherford as executor until 1879, and the will showing he was not sole heir at law or sole legatee, a prescriptive bill had ripened, and suit for mesne profits was barred ; and on the further ground that, plaintiff having shown that he had brought his action on the note dated 25th of December, 1861, to October term, 1866, of Dougherty superior court, and recovered judgment against Tompkins

thereon, and having failed to file a deed to the land and levy on and sell the same without any reason therefor, he had elected his remedy, and could not afterwards bring ejectment. The motion for non-suit was overruled, and defendant excepted.

In addition to the plea of the general issue, the statute of limitations, and title by prescription, defendant filed a number of amended pleas, which he read upon the closing of plaintiff's case. Taken all together, they set up substantially the following defenses:

(1) That by suing on the purchase money note the executor elected to ratify the sale, and was estopped from bringing ejectment.

(2.) That if the executor could recover the land, defendant in equity should be allowed the amount he had already paid thereon.

(3.) That the original declaration was in the name of Rutherford as heir at law (there being other heirs also); that if defendant's prescriptive title had not ripened before the beginning of this suit, it had done so before it was changed by amendment to a suit by the executor.

(4) That at the time judgment was rendered on the note of Thompson he was solvent, and so remained for some time thereafter, but subsequently became insolvent; that by the laches of plaintiff in failing to pursue his rights the debt was lost and defendant damaged; wherefore he claimed that plaintiff was estopped from bringing this action.

(5.) The eighth plea contained both a claim of prescriptive title at the time of the commencement of the suit, and also a substantial repetition of the third plea above.

(6.) That after judgment on the purchase money note the land was simply a security, and title was not in the plaintiff so as to warrant an action of ejectment.

(7.) That defendant was a *bona fide* purchaser for value, and as such entitled to protection, plaintiff having failed to proceed for more than four years after judgment on the note.

(8.) That plaintiff had abandoned all claim of title to the land by failing to pay taxes thereon since 1864.

(9.) That defendant had paid a considerable amount for taxes, which he claimed the right to recoup before the land or mesne profits could be recovered.

All of these amended pleas were stricken except the general claim of a prescription stated in number five above.

The other facts are sufficiently stated in the decision.

The jury found for the plaintiff the premises in dispute with $750.00 mesne profits. Whereupon defendant excepted.

G. J. WRIGHT; D. A. VASON; WARREN & HOBBS; R. F. LYON, for plaintiff in error.

W. E. SMITH; JOHN RUTHERFORD; J. C. RUTHERFORD, for defendant.

JACKSON, Chief Justice.

This was an action of ejectment brought to recover a tract of land in the county of Dougherty. The jury found for the plaintiff the premises in dispute, and the defendant excepted to various rulings of the court pending the trial, and assigns for error said rulings.

This cause was here before and is reported in 63 *Ga.*, 244. The points then ruled, unless so changed by new proof on the trial now to be reviewed as to make those principles inapplicable, are *res adjudicata;* and it will simplify matters to dispose of them first.

1. It was then ruled that though the suit was brought by Williams Rutherford as heir at law, it could be amended so as proceed in his name as executor of the will of the decedent. It is in proof now, or proof was offered to show, that there are two other heirs at law of decedent, whereas on the former trial no heir was known to the court except the plaintiff's lessor, Rutherford, who was allowed to amend by dropping heir at law and inserting executor.

Counsel for defendant, now plaintiff in error, insists that the proof of two other heirs being in life so changes the status that the amendment then allowed is illegal; he moved to strike it, and on the court's refusal, assigns error. We cannot see what difference that makes as to the principle then ruled. The principle then ruled was that a party in any case in ejectment, as in any other, could change an individual suit by amendment to a suit in his representative character, and that the words "as heir at law" were merely descriptive and amounted to nothing. The suit in the bare name of Rutherford was precisely the same as the suit in his name with the added words as heir at law. His title as an individual and as heir at law would be identical—that is title by descent—whether he had put in the words "as heir at law" or not, he could show that he was, and derived his right by descent; whereas his title as executor is distinct, as in that character he took by purchase, under the will to pay debts and for the legatees and not at all by descent. The right to amend was put on the statute authorizing amendments and not on any connection between the heir at law and the executor. So that it can make no difference if there were three or a dozen heirs at law in life at the time the suit was brought. But one sued, and he changed the character of his suit to that of executor of the will of decedent from his individual right as heir at law. The court could do nothing else, therefore, under the principle ruled in this case, reported in the 63d *Ga.*, than to deny the motion to strike the amendment.

2. This court also then held that the amendment related back to the filing of the original suit, and that therefore the prescriptive right of defendant's possession stopped running at that date, and did not move on to the date of this amendment when the lessor of the plaintiff was changed from an individual to an executor. The whole title was in him as executor to carry out the will, and no matter how many heirs there were, none of them had title

as heirs but legatees, and none were barred who were not barred when the suit was originally filed. Everybody who took under that will was represented by this executor, and as by the amendment and its relation back to the original suit the executor sued when the writ was first filed in office, all interested then sued by and through him.

3. But this court then held also that the bar of the statute did not attach to the case then made, counting it to cease running at the date of the beginning of the action, or rather the prescriptive right of the defendant was not then made out, for the reason that the continuity of the chain of possession was broken by one link being destroyed, and that this link became unfastened when Jones conveyed the land back to Tompkins, January 8th, 1864, and Tompkins, not Jones, then conveyed to Hines, who held under Tompkins. and not under Jones. Tompkins' possession was merely permissive, his whole title being shown by bond for titles, and the purchase money not being paid. It is true, that Jones' possession was adverse to Rutherford and to his executor, because he took an absolute deed from Tompkins, and if Jones had made title to Hines, and if Hines had taken title and possession under him, Hines would have held a good title by prescription; but instead of so doing, Hines took the title from Tompkins and went in under him; therefore, as ruled in this case in 63d *Ga.*, when here before, the continuity of possession was broken, and Hines' prescriptive title did not run the prescribed unbroken length.

A new fact, however, it is said, is here that may not have appeared in the record before, and probably did not; because Judge BLECKLEY, in delivering the opinion then, says, that "Though the possession of Jones was adverse, its continuity was broken by the intervening permissive possession of Tompkins," evidently taking it as true that from the 8th of January, 1864, when Jones deeded back to Tompkins, up to the 23d of the same month, when Tompkins conveyed to Hines, Tompkins again was in ac-

tual possession, whereas now it appears that he was not in actual possession, but Jones held the actual possession until Hines went in on the 23d. The record does not fully and clearly establish this fact, but assuming that it is so, then the question now presented is this: does the fact that Jones, though he parted with the title to the land on the 8th by conveying to Tompkins, still held the possession till the 23d, when Hines took possession, alter the effect of the ruling as reported in the 63d *Ga.?* Was the continuity of adverse possession under claim of right preserved from the 8th to the 23d? We do not think so. There was no right of possession—no claim of right or color of title in Jones during that period, except under and for Tompkins. From the date of his deed to Tompkins, when he parted with the right of possession and conveyed all right out of himself to the land, up to the day Hines went in, Jones held possession for Tompkins, and the possession he turned over to Hines was the possession of Tompkins; and that was not adverse to Rutherford, because Tompkins only held from Rutherford under bond for titles when the purchase money was paid, and the purchase money was not then paid. 12 *Ga.*, 450; 25 *Ib.*, 507; 63 *Ib.*, 244.

The conclusion is logical, as appears to us, that this new fact, considering it so, does not vary the case made and decided in the 63d *Ga.* If Tompkins attempted to tack to a possession of his this possession of Jones', or to rely on seven years' possession by himself or anybody else with himself, it is clear that he could not set it up against Rutherford till he had paid the purchase money; and Hines cannot tack any possession or right of possession in Tompkins to his own adverse possession, because Tompkins never had any right to possess, or actual possession which was adverse to Rutherford. For these reasons we think the ruling in the 63d still controls this case on this point.

4. Another point made is that the plaintiff cannot re-

cover in the action of ejectment, because he has sued and obtained judgment on the note for the purchase money; and has the right to make a deed and sell under sections 3586 and 3654 of the Code.

It is argued that the words "may be levied," in the first section cited, and the words "it shall and may be lawful," in that last cited, are equivalent to an imperative command to the vendor to pursue this remedy where he holds the legal title and has given bond for titles; that "may" means "shall," and must be so construed. We think that the words are permissive, not mandatory, and that it would do violence to their obvious import so to construe them in these statutes. In respect to the other position, that the plaintiff had the two remedies, and having elected to sue on the note could not bring ejectment, it is enough, perhaps, to say that the plea has been held one in abatement by this court at this term, and that it should be filed at the first term; and as this was not so filed, the point is controlled by that case. But we think, as intimated in the case referred to, *Dykes, trustee, vs. McVay*, that on the merits, if properly in, the one case would not bar the other, or that because the party had elected to sue on the note for the balance of purchase money and got judgment thereon, that he would therefore be forced to go on and make a deed to the land and sell it as the property of the maker of the note, rather than sue the party in possession of it on the legal title with which he had never parted or agreed to part until the purchase money was all paid. The only effect would have been to try the title in a claim case made by Hines instead of in ejectment. All defenses good in one would have been equally so in the other form of action. See *Dykes, trustee, vs. McVay*, this term, and cases cited there. But this case really does not come under section 2894 of the Code, for even if it were the same cause of action, it is not between the same parties.

The above are the controlling points in this case, and those pressed in the argument here. Some arose on mo-

tions to strike pleas, and others on motions to continue and the rejection of testimony.

We understand that the amount of mesne profits was agreed upon, and thus the question about setting off taxes paid by defendant against them is not before us, and we do not see how taxes paid by one in possession of another's land can defeat the true owner or be set off against the land itself.

We see no error in striking the pleas numbered and set out in the record and the part of number eight which was stricken, for the question that portion made had been ruled in this very case as reported in the 63d. *Ga.*

5. The truth is that the defendant hardly stands on the footing of a purchaser for value without notice. His immediate feoffor, on whose title he relied, held only a bond for titles from Rutherford. Ordinary diligence required him to see what that title was. True, his grantor also held a deed from Jones, but Jones had not held adversely long enough to vest in him prescriptive title, and had only a few days before made title to Tompkins, who before had conveyed to him. On the 8th of January Jones made the deed to Tompkins, on the 17th Tompkins gave power of attorney to Vason to sell for him, and on the 23d Vason, for Tompkins, made the deed to Hines. The bond for titles to Tompkins, Hines afterwards saw in Vason's possession, and for aught that appears it was there at the time of the conveyance to defendant. That bond was the corner-stone of the title out of Rutherford, and diligence required Hines, seeing there was no deed on record from Rutherford, to enquire how title passed out of him. Had he asked that question and demanded that evidence of title, there would have been no trouble. It may be a hard case, but we do not see that either law or the principles of equity as settled in the books, will protect the defendant. He got the title of Tompkins, no more, no less, and that was the right to the land when the purchase money was paid. 57 *Ga.,* 601 [7].

Judgment affirmed.