W. E. BLAKE, Trustee, v. THOMPSON McCOSH and
MATILDA McCOSH, Appellants.

Mortgage on Homestead: Exhausting Other Security. A
1  mortgage on a homestead and other securities may be foreclosed in
   one action, if the decree order that the homestead be sold last.

Same: Pledged Life Insurance Policy. Where a life insurance
2  policy is pledged to secure a debt also secured by a mortgage on a
   homestead, an agreement by the assured that premiums advanced by
3  the pledgee shall be a first lien in the policy is valid without the wife's
   consent, and does not increase the burden on the homestead.

Description: Sufficiency: Pleading. The mortgage described the
   premises as lots 21 and 22 in block 948. Only a subdivision of the
4  block is divided into lots, to wit, 21. Defendant's homestead is on lot
   21 and on a tract adjoining it, which was entered on the tax books as
5  lot 22, and had been so conveyed by the defendant and others. The
   answer admits that the mortgage covers defendant's homestead. *Held*,
   a sufficient description of the homestead, and that foreclosure was
   proper without reforming, or a prayer for reformation.

*Appeal from Des Moines District Court.*—HON. JAMES
D. SMYTHE, Judge.

TUESDAY, OCTOBER 2, 1894.

SUIT in equity to foreclose a mortgage. From a
decree in plaintiff's favor the defendants appeal.—*Af-
firmed.*

*J. T. Illick* and *C. L. Poor* for appellants.

*Blake & Blake* for appellee.

DEEMER, J.—Plaintiff, in his petition and amend-
ments thereto, seeks to recover judgment against de-
fendant Thompson McCosh upon two promissory notes,
one for five thousand dollars, and the other for three
thousand dollars, executed on the seventh day of Octo-

ber, 1891, by the McCosh Iron & Steel Company and
Thompson McCosh, due ninety days after date, and
prays the subjection of twelve bonds for the sum of
twelve thousand dollars, issued by the McCosh Iron &
Steel Company, pledged as security for the aforesaid
notes, and a certain life insurance policy, for the sum
of $8,000, issued by the Connecticut Mutual Life Insur-
ance Company upon the life of Thompson McCosh,
also pledged for the payment of the said notes, to sat-
isfy his judgment. He also asked the foreclosure of a
certain mortgage made by defendant Thompson Mc-
Cosh and his wife, Matilda McCosh, upon lots 21 and
22 in block 948 in the original city of Burlington,
usually described, as is alleged, as lots 21 and 22, in
Barrett's subdivision, in block 948, in the original city
of Burlington, Iowa, given to secure the five thousand
dollar note. Plaintiff also alleged that, in order to
keep the life insurance policy alive, it became necessary,
about July 28, 1892, for him to pay a premium matur-
ing thereon, and that he made a contract with Thomp-
son McCosh to pay the same; that in said contract it was
agreed that any premium payment made by plaintiff
should become part of the original indebtedness secured
by the policy of insurance, and draw interest at the
rate of 6 per cent.; that he paid the sum of two
hundred sixty two dollars and thirty two cents, the
amount of the premium due on the policy of insurance;
and he asks judgment for this payment, in addition to
the sum due on the notes, and that he be protected in
the decree for the payment so made. Defendant
Thompson McCosh, in his answer, averred that he was
a surety on the notes sued upon, for the McCosh Iron
& Steel Company. He further alleged that the mort-
gage referred to in the petition was upon his home-
stead, and that the bonds of the company and his life
insurance policy were ample and sufficient security for
the plaintiff's debt. And he asked that plaintiff's peti-

tion, asking the foreclosure of the mortgage upon his homestead, be dismissed; that plaintiff be required to pursue his remedy against the iron and steel company, and the bonds and life insurance policy held by him as security for his debt, before resorting to the homestead. Defendant Matilda McCosh averred that the consideration for the note sued upon was received by the iron and steel company, and that she received no benefit therefrom; that the real estate described in the petition is her homestead, and that the mortgage thereon was to secure the note of five thousand dollars; that the bonds of the company, and the life insurance policy pledged as security for the five thousand dollar note, as well as for the note of three thousand dollars, were and are sufficient and ample to pay all of the plaintiff's claim. On the issues thus presented, the cause was tried to the court, and a decree passed, foreclosing the mortgage, and subjecting the bonds of the company and the life insurance policy to the payment of the amount due on the notes, as well as the premium paid by plaintiff on the policy of insurance. The decree also provided that the bonds of the company be first sold, and the proceeds applied in satisfaction of the judgment, and, in default of said property selling for sufficient to satisfy the same, then that the life insurance policy be sold, and from the proceeds thereof there should be paid— *First*, the amount of premium paid by the plaintiff, with interest; and, *second*, the balance remaining of the judgment after exhausting the bonds, and then there should be sold the real estate to satisfy the unpaid portion, if any, of the judgment. The decree further provided that the total sum paid from the proceeds of the real estate should not exceed the sum of five thousand, three hundred and thirty-five dollars and eighty three cents, with interest from November 10, 1892, being the amount of the debt the mortgage was made to secure. From this decree, defendants McCosh appeal.

I. It is insisted that the suit was premature, in that the plaintiff must first exhaust the securities held by him, other than the homestead, before proceeding against it. We think the decree fully protects the defendants in their homestead rights, and that the plaintiff is not required to bring separate actions, one to subject the bonds and life insurance policy to the payment of his claims, and thereafter another, to foreclose the mortgage upon the homestead for the satisfaction of such part of the judgment as remains unpaid. The notes were due when the suit was commenced, and the objection is without merit.

II. Exception is taken to the judgment for the premium paid by plaintiff on the insurance policy, and to subjecting the securities to the payment of this claim, on the theory that this increased the burden upon the homestead without the wife's consent, and materially changed the obligation placed thereon by the wife. That the judgment did apparently have this effect can not be denied. It is also true that the husband can not, without the consent of the wife, mortgage the homstead, or enlarge or extend the terms of any such mortgage, by his own agreement, or materially change it in any respect to her disadvantage. But, in this case, it appears that the payment of the premium was necessary to preserve the security. Without it the policy would have lapsed, and the burden on the homestead would have been correspondingly increased. The contract between plaintiff and Thompson McCosh with reference to the payment of the premium, revealed that McCosh was fearful he could not meet the premiums as they fell due, and that he desired the policy kept alive, and for that reason he agreed that any payments of premiums plaintiff might make should become part of the original indebtedness. It will thus be seen that these payments were for the benefit of the homestead, rather than prejudicial. Without this agreement, plaintiff might

have paid the premiums, and had them decreed in equity a lien upon the policy, and such payment would have been of advantage to the homestead right. Jones, Mort., sec. 358; *Raley v. Ross*, 59 Ga. 862; 18 Am. and Eng. Encyclopedia of Law, 658.

III. It is next claimed in argument that the description of the premises in the mortgage is uncertain, defective, and void, and that the court, in effect, reformed the mortgage, as against the wife, without any prayer for such relief in the petition, and without authority of law. It will be observed that the defendants did not raise any such issue in their answer. On the contrary, they expressly averred that the property described in the mortgage and in the petition is their homestead. Reformation of the mortgage is not asked in the petition, nor did the court undertake to reform it. It is alleged in the petition that the property, while described in the mortgage as lots 21 and 22 in black 948 in the original city of Burlington, Iowa, was also usually described as lots 21 and 22 in Barrett's subdivision of block 948 in the original city of Burlington, Iowa. The proof merely followed these allegations, and the decree finds them to be true; so that the testimony offered on this point was not for the purpose of reforming the mortgage, but to identify the property which it covers. The description given in the mortgage was not ambiguous or uncertain, and the defendants admit in their answer that it covered their homestead. This is sufficient to sustain the decree. *Whitney v. Buckman*, 13 Cal. 536; *Tryon v. Sutton, Id.* 490. Grant that the testimony adduced showed a latent ambiguity in the description,—and this is the most that can be claimed,—and apply the rule that such description may be "holpen by averment." It appears from the testimony that there is a block 948 in the city of Burlington, according to the original plat, but it was not subdivided

into lots. The division into lots arose under what is called "Barrett's Subdivision," made in October, 1844. In Barrett's subdivision, there is no lot 22, according to the original recorded plat. The lots are numbered from 9 to 21, inclusive. Immediately north of lot 21, however, and in the same block, is a tract of land, ninety by one hundred and seventeen feet, upon which is the defendants' house, and this, with lot 21, constitutes their homestead. This tract of land, upon which is defendants' house, was assessed as lot 22, and so entered upon the tax books. It was conveyed by some of defendants' remote grantors as lot 22, and at the time of making the mortgage in question, the original plat book designated this tract as "Lot 22," such figures being put on in pencil by the deputy county auditor, from an old plat book. Defendants intended by this description to cover their homestead, and, in their answer, say it did cover it. Applying the well known rules of construction to these facts, there is no question but that the mortgage covered the defendants' homestead, under the description given. We think the decree should be AFFIRMED.