## The Chicago and Alton Railroad Company

*v.*

## Frank Keegan *et. al.*

*Opinion filed April 17, 1900.*

1. Burnt records—*section 9 of Burnt Records act construed.* Section 9 of the Burnt Records act, (Rev. Stat. 1874, p. 841,) which provides that instruments appearing by the abstract of title to have been executed shall be presumed to have been executed and acknowledged according to law, except as against persons "in the actual possession of the lands or lots described therein at the time of the destruction of the records, * * * claiming title thereto otherwise than under a sale for taxes or special assessments," contemplates an adverse, continous possession for twenty years.

2. Power of attorney—*presumption as to continuance of life of principal.* In the absence of proof to the contrary, the maker of a power of attorney will be presumed to have been alive five years later, at the time of the execution of a deed in his name by the attorney in fact appointed under such power.

3. Evidence—*what not a valid objection to admission of deeds of corporation.* In ejectment by a corporation entitled to hold real estate for any purpose, the deeds under which it claims title cannot be denied admission in evidence upon the alleged ground that the corporation exceeded its powers in taking the conveyances, since that question can be raised only by the State.

4. Ejectment—*when refusal of plaintiff's instruction is error.* Where the defense to ejectment is adverse possession and the plaintiff has made out a connected chain of title, it is error to refuse an instruction that the deeds and papers introduced in evidence by the plaintiff authorize a recovery, unless the defendant has established his defense of adverse possession.

5. Same—*plaintiff need not trace title of canal lands to United States.* The court will take judicial notice that the United States was the original proprietor of lands granted to Illinois, in pursuance of an act of Congress, for canal purposes, when the same are the subject of litigation in ejectment, and the plaintiff need not trace title further back than the State.

6. Instructions—*when erroneous instruction is not cured by a proper one.* An erroneous instruction is not cured by a proper one for the opposite party where they are entirely variant, and there is nothing to show the jury wbich to adopt, and it is impossible to say from the evidence that the jury did not follow the erroneous one.

7. Same—*when instruction in ejectment is erroneous.* An instruction for the defendant in ejectment is erroneous and misleading which

holds that certain deeds from the defendant to his wife conveyed to her whatever title he had to the property, including the legal possession, where, at the time of such conveyance, he was a mere squatter or trespasser, having no real title or right of possession against the true owner.

8. ADVERSE POSSESSION—*previous possession is of no avail after interruption.* If the continuity of an adverse possession is broken but for a single day before the period of limitation is complete, the possession of the true owner constructively intervenes and the previous possession is unavailing.

9. SAME—*what will break continuity of adverse possession.* The execution of a deed to a third person by one in the adverse possession of land, which is unaccompanied by a delivery of possession to such third person, breaks the continuity of possession and interrupts the running of the Statute of Limitations, even though such third person conveys the property the same day to the wife of his grantor.

10. SAME—*when husband's taking of lease binds wife to recognition of true owner's title.* Where a trespasser conveys the property to his wife and they continue to reside upon the premises with their children, her possession is subordinate to that of her husband since she takes no title by such conveyance, and his subsequent taking of a lease from the true owner is binding upon the wife in so far as it operates as a recognition of the true title.

Special concurrence by BOGGS, J.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. CHARLES G. NEELEY, Judge, presiding.

This is an action of ejectment, begun on December 2, 1886, by the plaintiff in error against the defendants in error, Frank Keegan and his wife, Catherine H. Keegan, now deceased—the latter having died since the beginning of the suit—to recover possession of a piece of ground in the city of Chicago, lying between Archer avenue and the south end of a slip (now filled up) between lots 2 and 3 in Brainard & Evans' subdivision, being part of said lots 2 and 3 in said subdivision in canal trustees' subdivision of south frational section 29, 39, 14, east. On December 21, 1886, both defendants filed a plea of not guilty. The case was tried without a jury, and the plaintiff took a new trial under the statute. The case was re-tried without a jury, and afterwards, on appeal to this court, was

reversed and remanded, as will be seen by reference to *Chicago and Alton Railroad Co.* v. *Keegan*, 152 Ill. 413, in which the opinion was filed October 29, 1894. On November 17, 1898, the defendant in error, Frank Keegan, filed a separate plea denying the possession of the premises at the time of the beginning of the suit or since or for five years prior thereto. The case was then again tried before the court and a jury, and a verdict was returned finding the defendants not guilty on December 5, 1898. Motions for new trial and in arrest of judgment were denied, and judgment was rendered upon the verdict so returned on February 4, 1898. The present writ of error is sued out for the purpose of reviewing this judgment.

LEE & HAY, (WILLIAM BROWN, of counsel,) for plaintiff in error.

SULLIVAN & MCARDLE, and P. L. MCARDLE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The original tract of land, of which the premises here in controversy are a part, was the south fraction of section 29, township 39, north, range 14, east of the third principal meridian, which was conveyed to the canal trustees in 1845 by the State for the purposes of the Illinois and Michigan canal, and by them subdivided into blocks and lots in 1848. Upon the trial below, the plaintiff in error sought to establish its title by a regular chain of conveyances from the State of Illinois. The defendants in error set up, as a defense, an alleged possession of twenty years under the Statute of Limitations.

It is assigned as error by the plaintiff in error that the trial court refused to give instruction No. 13 asked by the plaintiff in error. That instruction is as follows:

13. "The court instructs the jury that the deeds and papers introduced in evidence by the plaintiff in this case are sufficient to vest the legal title to the whole of the land described in the declaration in the plaintiff, and to authorize it to take possession of the whole of that tract of land, unless the defendants have shown an adverse possession to the same or to some part thereof, as explained in these instructions, for a period of twenty years or more before the commencement of this suit, or some valid legal right to the possession of the premises claimed, or some part thereof, by a preponderance of the evidence."

We are of the opinion that the refusal of instruction No. 13 was erroneous. In *Toledo, Wabash and Western Railway Co.* v. *Brooks*, 81 Ill. 245, we said (p. 247): "If the court were to instruct the jury that the plaintiff's evidence was better than the defendant's, or the converse, we presume all would say that it would amount to an instruction to find in favor of the better evidence, and thus take the whole case from the consideration of the jury. It is not error for the court to thus instruct in case of records, writings or other evidence which is in its nature conclusive, or cannot be contradicted." Plaintiff in error showed title in itself, and was entitled to recover unless defendants in error proved a possession of the premises for a period of twenty years prior to the commencement of this suit.

The premises in controversy are parts of lots 2 and 3 in Brainard & Evans' subdivision of block 2, the east part being in lot 2, and the west part being in lot 3. As to the portion of the premises situated in lot 3, we held in *Chicago and Alton Railroad Co.* v. *Keegan*, 152 Ill. 413, that plaintiff in error had established its title, and was entitled to recover. The evidence as to lot 3 is precisely the same as it was when the case was here before, and need not be reviewed. We are content with the conclusion

already reached as to the title of plaintiff in error to the portion of the premises situated in lot 3. On June 19, 1852, Daniel Brainard, being the owner of lots 2 and 3 in block 2, conveyed an undivided half of said lots to John Evans, and on April 8, 1856, a subdivision was made by Brainard and Evans of block 2 into three lots with a street and a slip. On the same day an original partition deed was made between Brainard and Evans, setting off lot 2 in Brainard & Evans' subdivision to Brainard and lot 3 to Evans. On February 2, 1886, John Evans deeded to George Straut that portion of lot 3 here in controversy, and on November 17, 1886, George Straut deeded the same to the plaintiff in error, the Chicago and Alton Railroad Company.

On August 1, 1862, Brainard and his wife deeded to Edwin A. Welsh that part of lot 2 in said subdivision south of the railroad. Abstracts of title introduced by the plaintiff in error show a power of attorney, dated April 4, 1863, from Welsh to Edward G. Asay; a deed of the same date from Welsh by Asay, his attorney, to Edgar F. Griffin; a quit-claim deed, dated April 14, 1863, from Edgar F. Griffin to Augustus Griffin; a power of attorney, dated April 23, 1860, to convey real estate from Augustus Griffin to Edward W. Griffin; and a quit-claim deed, dated June 15, 1865, from Augustus Griffin by Edward W. Griffin, his attorney in fact, to David Dows. Plaintiff in error then introduced an original warranty deed from David Dows and wife to the Chicago and Alton Railroad Company, conveying for the consideration of $25,000.00 all of said lot 2. The chain of conveyances thus shown by the plaintiff in error established a good *prima facie* title in itself, unless some one or more of the objections made to said *prima facie* title by the defendants in error are good.

The abstracts of title introduced by the plaintiff in error are objected to by the defendants in error upon the alleged ground that, at the time of the destruction of the

records of Cook county in October, 1871, the defendants in error were in possession of the portions of lots 2 and 3 here in controversy, and were then claiming title otherwise than under a sale for taxes or special assessments. It is, therefore, urged that, under section 9 of the Burnt Records act, the presumption as to due execution and acknowledgment of the instruments shown by the abstract cannot prevail. The portion of section 9 here referred to is as follows: "In all cases in which any abstracts, copies, minutes and extracts, or copies thereof shall be. received in evidence under any of the provisions of this act, all deeds or other instruments of writing appearing thereby to have been executed by any person or persons, or in which they appear to have joined, shall (except as against any person or persons in the actual possession of the lands or lots described therein at the time of the destruction of the records of such county, claiming title thereto otherwise than under a sale for taxes or special assessments,) be presumed to have been executed and acknowledged according to law; * * * and any person alleging any defect or irregularity in any such conveyance, acknowledgment, sale, judgment, decree or legal proceeding shall be held bound to prove the same." (Hurd's Stat. 1897, p. 1292). It is said that the presumption does not exist as against the defendants in error, because they were in the actual possession of the premises in October, 1871, when the records were destroyed, claiming title thereto otherwise than under a sale for taxes or special assessments. But the proof does not show, nor is it claimed on the part of the defendants in error, that, when the records of Cook county were destroyed in October, 1871, they had been in possession of the premises in question for twenty years. At that time they had been in possession, if at all, not much more than six years. Hence, the case of defendants in error does not come within the exception of section 9 or 14. In *Smith* v. *Stevens*, 82 Ill. 554, we said: "It is claimed by

appellant his case comes within the exception of section 14 of the act in question, and the abstract, therefore, not admissible against him, he being in possession, claiming title otherwise than under a sale for taxes or special assessments. If appellant's views were correct, the statute would, in very many cases, be ineffectual for relief and remedy. Possession of a tract of land, claiming title, cannot defeat the real owner of the title unless such possession is adverse and has so continued for twenty years. It cannot be claimed that possession short of that period can prevail against a title, the record of which has been destroyed by fire. Independent of the statute, the plaintiffs, on general principles, would have a right to rely on secondary evidence to establish title, and nothing short of a legal defense could prevail against it." It follows that the first objection of the defendants in error to the *prima facie* title established by the plaintiff in error is not tenable.

Defendants in error also make objection to that portion of the abstract of title showing a quit-claim deed from Augustus Griffin by Edward W. Griffin, his attorney in fact, to David Dows upon the alleged ground that the power of attorney, executed by Augustus Griffin to Edward W. Griffin, was dated April 3, 1860, and no evidence was introduced to show that Augustus Griffin, the grantor in the power of attorney, was alive on June 15, 1865, when the deed was executed to David Dows. As Augustus Griffin was alive April 3, 1860, when he gave the power of attorney to Edward W. Griffin, the law presumes, in the absence of any proof to the contrary, that he was living on June 15, 1865, when the deed was executed in his name and stead by Edward W. Griffin. "When a person is shown to have been living at a given time the continuance of life will be presumed, until the contrary is proved or is to be inferred from the nature and circumstances of the case." (1 Jones on Law of Evidence, sec. 56).

The testimony shows that the abstract of title was made from the records of Cook county and from an examination of judgments in the courts there, and the record of tax sales, and we do not regard the certificate to such abstract as justifying the inference that it was made from the private indices of the abstract makers. So far as the certificate is based upon their private indices, it shows that the conveyance to Dows was taken from the record.

It is also claimed, that the original deeds to the plaintiff in error, executed by its immediate grantors, should not have been received in evidence upon the alleged ground, that the railroad company was not entitled to acquire the land described under its charter. It is said that its charter vested it with power to acquire any extension of its road by lease, purchase or otherwise, by or with the written consent of its stockholders, and that such consent was not shown, and no proof was introduced that the land acquired was an extension of the company's road. A corporation has power to acquire and hold such real estate as is necessary for the purposes of its business, and the State alone can question the right of a corporation to own real estate. In *Cooney* v. *Booth Packing Co.* 169 Ill. 370, we held "that if a corporation has power to take and hold real estate for any purpose, when the deed to it is executed the title passes to it, and whether the corporation exceeded its powers in accepting the conveyance was a question which could only be raised by the State."

It is claimed, however, that instruction No. 13, by the use of the words, "some valid legal right to the possession of the premises claimed, or some part thereof," submitted the law to the jury. The instruction may have been defective so far as it told the jury that the plaintiff was entitled to recover, unless the defendants showed some valid legal right to possession. But this defect in the instruction could have done the defendants in error

no harm. On the contrary, it was an error which was favorable to the defendants in error, because the only defense which they set up in the case was that of possession for twenty years; and if the instruction presented the matter to the jury in such a way, as to lead them to believe that there was some other defense upon which the defendants in error might rely, the latter were benefited and not injured.

Inasmuch as instruction No. 13 merely told the jury that the plaintiff in error had made out a title to the premises in question, unless the defense of adverse possession was established, the instruction should have been given, and it was error to refuse it.

The plaintiff in error furthermore assigns as error that the court gave, at the request of the defendants in error, instruction No. 36. Instruction No. 36 is as follows:

36. "As against the defendant, Catherine H. Keegan, the burden is upon the plaintiff to entitle it to recover to prove by a preponderance of the evidence a connected chain of title from the United States down to itself."

This instruction was clearly wrong. The source of title was in the State of Illinois, and judicial notice is taken that the United States was the original proprietor and granted the land to the State. The land in controversy was a part of the canal lands shown in the selection by the President of the United States, pursuant to the act of Congress in 1827, donating lands in Illinois for the purposes of the Illinois and Michigan canal, and conveyed by the Governor of the State to the canal trustees. There was, therefore, no burden upon the plaintiff in error to go farther back than the State of Illinois in proving its chain of title. In *Smith* v. *Stevens*, 82 Ill. 554, we said: "It was, therefore, necessary to commence at the source of title, which, in this case, was the State of Illinois. We take judicial notice of the fact that the United States were the proprietors of section 17, township 39, north, range 14, east, and that they granted the same to

this State." We think that instruction No. 36 authorized the jury to find against the plaintiff in error, if they considered that the plaintiff in error had not shown a connected chain of title from the United States down to itself, when it was only necessary for it to show a chain of title from the State of Illinois to itself. It is said, however, on behalf of defendants in error, that the error in giving instruction No. 36 was cured by instruction No. 30, which was given on behalf of plaintiff in error. Instruction No. 30 is as follows:

30. "The jury are instructed, as matter of law, if you believe from the evidence that the land in question in this case is a portion of the south fractional half of section twenty-nine (29), * * * that the source of title to such land is in the State of Illinois, and that in proving title to the land in question it is not necessary for the plaintiff to commence with the United States, or to go further back than the State of Illinois as a starting point in making out its chain of title to said land."

The two instructions, Nos. 36 and 30, are irreconcilable, and there is an absolute conflict between them. The jury were obliged, in determining the question as to the true source of plaintiff in error's title, to discard one of these instructions and to adopt the other. The giving of a correct instruction upon one point in a case will not obviate an error in an instruction on the other side, where they are entirely variant, and there is nothing to show the jury which to adopt. (*Illinois Linen Co.* v. *Hough*, 91 Ill. 63). An erroneous instruction cannot be said to be cured by a proper instruction on the other side, when, from the evidence, it is impossible to say that the jury did not follow the erroneous one. (*Kankakee Stone and Lime Co.* v. *City of Kankakee*, 128 Ill. 173). Error in giving an instruction is not always cured by the giving of an instruction contradictory of the one erroneously given. (*Pardridge* v. *Cutler*, 168 Ill. 504). The cases, in which it has been held that a bad instruction may be cured by

another, are cases where the bad and good instructions, when read together, clearly state the law, and where it can be clearly seen that the bad instruction has worked no harm.

It is assigned as error by the plaintiff in error that the trial court gave instruction No. 40 at the request of the defendants in error. Instruction No. 40 is as follows:

40. "If the jury believe from the evidence that in the year, 1870, Frank Keegan made a quit-claim deed of the premises in question to one Alfred Randall and acknowledged the same and at the same time said Randall made a quit-claim deed of the premises to Catherine Keegan, the defendant, and acknowledged the same, and that said two quit-claim deeds were recorded in the recorder's office of Cook county, Illinois, and that said quit-claim deeds were delivered to said defendant, Catherine Keegan, then the jury are instructed that said deed conveyed whatever title, if any, Frank Keegan had in said property at the time of the execution and delivery of said deeds to Catherine Keegan, including the legal possession of said premises therein described."

The evidence, upon which instruction No. 40 was based, was substantially as follows: Frank Keegan testified, that he made a deed to Alfred T. Randall, which was dated March 23, 1870, and that, on the same day, Randall executed a deed to Catherine H. Keegan, conveying "the premises 497 Archer avenue." Mrs. Keegan testifies that she saw these deeds and had them in her possession, and gave them to Randall to record. The deeds themselves were not produced, but affidavit was made as to their loss.

The testimony shows that Frank Keegan commenced to fill in the slip between lots 2 and 3, located partly on each lot, in 1864, but that he did not enter upon the premises in question with his family until June, 1865. When the deeds were made by Frank Keegan to Randall, and by Randall to Mrs. Keegan, in March, 1870, Frank Keegan had no right whatever to the premises, and had only been

in possession thereof about five years. Instruction No. 40 told the jury that the deeds in question conveyed to Mrs. Keegan whatever title Frank Keegan had in the property at the time of their execution and delivery, including the legal possession of said premises. This statement in the instruction was erroneous, because, at that time, he had no legal or lawful possession, as he had only occupied the premises about five years, and not for a period of twenty years. Until twenty years had passed, he was a mere squatter, or trespasser, and had no real title as against the true owner of the property.

In addition to this, there is proof tending to show that whatever possession Frank Keegan had to these premises prior to March 23, 1870, was not an adverse possession, but a mere permissive one. The Griffins and David Dows, owners of the paramount title from 1863 to 1866, were in possession of lot 2, and had a packing house thereon. Frank Keegan worked in this packing house for these owners of lot 2 as foreman, or in some other capacity, from some time in 1863 to September, 1866 or 1868. By his own admission he entered upon the premises in 1864, and began to fill in the slip by an agreement with one of the Griffins. He obtained the house, which he put upon these premises, from one of the Griffins. The portion of lot 2, which he occupied, was only about twenty-five feet from the packing house, and, according to the testimony of several of the witnesses for the defendants below, the part of lot 2 occupied by Keegan was a part of the packing house premises and enclosed with them. One of the witnesses testified that the premises occupied by Keegan adjoined the packing house. Keegan swears that he took his family into the house in question in June, 1865, while he was working for the owners of lot 2 in their packing house, and not very long after he had begun to work upon said premises by an arrangement with its owners. In the same month of June, 1865, lot 2, including that portion of the same claimed by the

Keegans, was conveyed by Edward W. Griffin, as attorney in fact, to David Dows. If Frank Keegan's possession was at that time anything more than a permissive possession on the part of the owners of lot 2, it is difficult to understand why said owners should have conveyed away to David Dows the portion then occupied by Keegan. In other words, there is a considerable amount of testimony, and testimony, too, which comes from the witnesses of the defendants in error, to the effect that up to March 23, 1870, Frank Keegan was occupying the premises not adversely to the owners of the paramount title, but in subordination to their title. Inasmuch as he entered upon the premises under some kind of agreement or arrangement with one of the Griffins, who owned lot 2 and the packing house thereon, it would be presumed that his continuance in possession of the premises was also in pursuance of such arrangement or agreement. "The rule is, where the entry is made with the consent of the owner, and subservient to his claim of title, the law will presume that the continual (continued) possession was in subordination to the title of the true owner." (*Timmons* v. *Kidwell*, 138 Ill. 13).

If Frank Keegan entered upon these premises in June, 1865, with his family in subordination to the title of the true owners and continued his possession in subordination thereto until March, 1870, then, even if, at the latter date, he made a valid transfer of his possession to his wife, Catherine H. Keegan, no possession for a period of twenty years has been established. Twenty years did not elapse after March 23, 1870, before this suit was begun on December 2, 1886. In view of the fact that there was testimony tending to show that the possession up to March, 1870, was merely permissive and not adverse, instruction No. 40 was calculated to mislead the jury to the prejudice of the plaintiff in error. The effect of that instruction was to impress upon the minds of the jury the belief, that the possession after March 23, 1870, tacked

to the possession theretofore, would make a full period of twenty years of adverse possession; whereas they had a right to consider from the evidence before them the question, whether or not the first five years of the period in question was a mere permissive, and not an adverse, possession.

But even if the possession, which Frank Keegan had before 1870, had been an adverse possession, the execution of the deed to Randall at that time broke the continuity of his possession. It is true that a deed is not necessary to transfer the possession of land held adversely to the owner, and that where one person succeeds to the possession of another and it becomes necessary to connect the possessions of the two to make the period required to bar the owner, the transfer of possession may be shown by parol evidence. (*Weber* v. *Anderson*, 73 Ill. 439). But Frank Keegan did not transfer his possession in March, 1870, directly to his wife, but he executed a deed to Alfred J. Randall. It is not shown that Randall was ever in possession of these premises at all. Frank Keegan did not deliver to Randall with the deed the possession to the property. The deed conveyed to Randall the right of possession. The holder of the legal title is the owner of the right of possession. While Randall held the title, the claim of right in the property, or ownership of the property, was in him. An adverse possession of twenty years, in order to bar the assertion of the paramount title, must not only be an actual, visible, and exclusive possession, but it must be acquired and claimed under title inconsistent with that of the true owner. "It is enough that the party takes possession of the premises claiming them to be his own; and that he holds the possession for the requisite length of time, with the continual assertion of ownership." (*Turney* v. *Chamberlain*, 15 Ill. 271). An adverse and hostile possession "is a possession inconsistent with the possession, or right of possession, by another," "and must be continued under a

claim of right." (1 Am. & Eng. Ency. of Law—2d ed.—p. 789; *Weber* v. *Anderson, supra; Ely* v. *Brown,* 183 Ill. 575; *Hines* v. *Rutherford,* 67 Ga. 606). It is quite evident that when the deed was made to Randall, Frank Keegan relinquished his claim of ownership and right of possession, and, inasmuch as he thereby parted with his claim of ownership and right of possession without passing over the possession of the property to Randall, the continuity of his adverse possession was broken, and could not begin to run again, either in his own favor or that of his wife, except from and after March 23, 1870. It makes no difference that Randall held the title only for a short time. If the continuity of the possession is broken for a single day before the twenty years have elapsed, the previous possession goes for nothing, and the wrongdoer must commence *de novo.* (*Olwine* v. *Holman,* 23 Pa. St. 279; *Bullen* v. *Arnold,* 31 Me. 583). Whenever the running of the statute is interrupted, the possession of the true owner constructively intervenes, and the previous possession is unavailing. (*Reusens* v. *Lawson,* 91 Va. 226; *Davies* v. *Collins,* 43 Fed. Rep. 31; *Armstrong* v. *Morrill,* 14 Wall. 120; *Clark* v. *Lyon,* 45 Ill. 388; *Sullivan* v. *Eddy,* 154 id. 199).

Frank Keegan in his testimony claims to have been in possession of the premises with his family from 1865 to the time of the beginning of this suit, and yet it is claimed, on the part of defendants in error, that Catherine H. Keegan, and not her husband, was in possession of the premises during the period aforesaid. Frank Keegan was certainly not in adverse possession of the premises during said period, because the possession to be adverse must be under claim of right and claim of ownership, whereas, in 1882 and 1884, he disclaimed any ownership in the property to parties representing the owners of the paramount title thereto. Again, on April 20, 1885, he took a lease from Evans and Dows, the owners of the property, acting through one Lunt as their agent. We stop not to consider whether Lunt had authority to

execute the lease as agent for Evans and Dows. It is sufficient to show, as was held in *Chicago and Alton Railroad Co.* v. *Keegan*, 152 Ill. 413, that this lease was an admission by Frank Keegan, in writing and under seal, of the title of Evans and Dows, the grantors of the plaintiff. If Frank Keegan's possession was adverse, it did not begin to be adverse before June 15, 1865, and as he admitted the title to be in Evans and Dows in April, 1885, he did not have such possession, as the law holds to be adverse, for a period of twenty years.

It is insisted, however, that Mrs. Keegan refused to sign the lease to Evans and Dows, and that, under the deed from Randall, she was the owner of the adverse possession. Here is a man, who was the head of a family and in possession of certain premises with that family. After the possession had run about five years, he makes a deed to a third party and that third party deeds to his wife. If it be admitted that these deeds transferred the possession directly from him to his wife, the question arises, whether, under such circumstances, the wife is entitled under the law to be regarded as the holder of an adverse possession for twenty years. Mrs. Keegan had possession for only about sixteen years after March 23, 1870. To make the twenty years the previous possession of five years by her husband must be tacked to her possession. The husband cannot retain possession by taking a lease from the real owner of the property, and thereby lulling the latter to sleep, and subsequently claim that his giving of the lease was no acknowledgment of title in the real owner, because the real party in possession was his wife and not himself. It must be observed that Frank Keegan did not transfer any title to the property to his wife because he had no title. Where the wife owns the fee of homestead property, she may be so far considered the head of the family as to be called a householder. (*Zander* v. *Scott*, 165 Ill. 51; *Brokaw* v. *Ogle*, 170 id. 115). But where the wife receives no title from

her husband, and they are in possession of the premises together with their children, her possession is simply subordinate to her husband's possession. In such case, his admission of ownership in the holder of the paramount title is an admission which binds her also. Where the husband is the head of the family, as he is in the eye of the law, his taking a lease of the property is binding upon her, so far as it operates as a recognition of the title of the true owner. (*Davies* v. *Collins*, 43 Fed: Rep. 31; *Frink* v. *Alsip*, 49 Cal. 103; *Meier* v. *Meier*, 105 Mo. 411).

Instruction No. 40 was, therefore, erroneous, because it instructed the jury that the deeds from Keegan to Randall and from Randall to Mrs. Keegan transferred to the latter the legal possession, independent of the questions, fairly raised by the evidence, whether or not there was an interruption of the continuity of the possession by the deed to Randall, and whether or not the execution of the lease in question, and other admissions made by Frank Keegan, did not amount to such recognition of title in those, under whom the plaintiff in error holds, as was binding upon Mrs. Keegan as well as her husband.

Other errors in relation to the admission and exclusion of evidence are urged upon our attention, but we do not consider it necessary to consider the same. In view of the errors in the instructions as above indicated, the judgment of the circuit court of Cook county is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE BOGGS: I concur in the conclusion reached in the above opinion, but not in all that is said in the opinion in support of such conclusion.