FRANK WEIDLICH, ADMINISTRATOR, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

* First Judicial District, Hartford, March Term, 1919.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

Under ordinary circumstances a guest riding upon the rear seat of an automobile, with no control or authority over the driver, is bound to exercise but a very limited degree of care. He is not expected to direct the driver nor to keep a lookout; he may go to sleep, read, talk, or remain in deep thought, without being chargeable with negligence; but he would be negligent should he unreasonably fail to give warning of known danger. Moreover, the negligence of the driver, if any, is not to be imputed to such a guest.

* Transferred from third judicial district.

Proof that an occupant of a motor-vehicle was alive shortly before a collision with a railroad train at a grade-crossing, raises a presumption of fact that he was alive at the time of the accident, and warrants a finding to that effect. So also, proof that such occupant was upon the back seat shortly before the collision, warrants the inference or presumption that he continued there in the absence of evidence to the contrary.

The nature of an accident and the attending circumstances may warrant an inference, as in the present case, that the plaintiff's intestate was in the exercise of due care at the time of his death.

The plaintiff claimed that the defendant's gate-tender was guilty of negligence "in operating" the gates at the railroad crossing at the time of the accident, and the trial court expressly excluded from the jury's consideration any negligence arising from the physical condition of one of the gates, which was out of order. *Held* that the jury could not have failed to understand that the operation of the gate was the only ground of negligence charged in connection with them, although the court did use the expression "maintain and operate" in one portion of the charge.

The trial court instructed the jury that if they found that the plaintiff's intestate was on the back seat of the automobile and had no control over the car's operation, then he was in nowise chargeable with any failure of the driver to use reasonable care. *Held* that this stated the law upon the subject of imputed negligence clearly and with sufficient completeness.

Argued March 4th—decided April 16th, 1919.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate at a highway grade-crossing in Bridgeport, brought to the Superior Court in Fairfield County and tried to the jury before *Kellogg, J.;* verdict and judgment for the plaintiff for $10,000, and appeal by the defendant. *No error.*

The plaintiff's intestate, Ernest C. Weidlich, was riding as a guest on the rear seat of a closed automobile owned, controlled and driven by his brother, who was seated on the front seat, when the engine of defendant railroad, about 6.50 p. m. on January 23d, 1918, hit the automobile at the grade-crossing at North Avenue, Bridgeport, and as a consequence of the collision Mr. Weidlich suffered injuries from which he died.

North Avenue runs substantially northeast and southwest and defendant's single track railroad runs north and south over North Avenue, making a grade-crossing. Double trolley-car tracks were on North Avenue over which cars were operated over this grade-crossing. For a warning and a protection to travelers on this highway, the railroad company had for many years maintained at this crossing gates and a gate-tender to operate them by hand. There were four arms of this gate, two on each side of the railroad. The southeast gate had been out of order for some time.

In addition to the foregoing, there was evidence from which the jury might have found these facts: The train was late, and the gate-tender, who came on the job just before the accident, did not know the train was late. Just before the collision a trolley-car coming from the northeast stopped on the easterly side of the crossing and the conductor went ahead upon the railroad track, signaled to the motorman to cross, and the motorman thereupon drove his car across. The gate-tender heard the second whistle of the engineer when the engine was about eight hundred feet from the crossing, left his shanty alongside the track, signaled to the trolley-car to pass from the east to the west, and did not lower the gates. The trolley-car passed over the track, and following it came an automobile. The gate-tender could have seen the approaching engine when he went upon this crossing. The occupants of the Weidlich automobile, up to a point about one hundred and ten feet from the crossing, could not have seen the approaching train; and at one hundred and ten feet the trolley-car and the automobile would have completely obstructed the view and this obstruction would have continued up to a point twenty feet from the crossing. When the Weidlich automobile was within twenty feet of the crossing it was traveling at the rate of fifteen

miles an hour, while the train was traveling at the rate of twenty-five miles an hour, and was about one hundred feet from this crossing.

*James W. Carpenter,* with whom was *Paul Somers,* for the appellant (defendant).

*William H. Comley, Jr.,* for the appellee (plaintiff).

WHEELER, J.  The requested corrections of the finding, made the subject of the appeal, are without merit. Paragraph 15 of the statement of facts claimed in evidence by plaintiff, may be supported upon the gate-tender's statement of what he saw and heard and did. Paragraph 23, as to the view of the approaching train, is supported by inferences which may reasonably be drawn from the testimony of the engineer, Burns. Paragraph 6, as to the freedom from negligence of the plaintiff's intestate, was a conclusion which the trier might reasonably have made from all the facts and circumstances in the case.  The corrections asked did not justify the printing of the evidence.

The motion to set aside the verdict could not prevail if the finding of the intestate's due care stands.  The failure of the gate-tender to lower the gates, or to give adequate warning of the approach of the train, amply justified a finding of negligence on the part of the gate-tender.  The intestate was a guest in the automobile; he had no control over the driver and no authority to direct him.  He was not responsible for the negligence of the driver of the automobile, had there been such. *Sampson* v. *Wilson,* 89 Conn. 707, 96 Atl. 163.  The intestate must have exercised due care, but this is the care that may be reasonably inferred from the circumstances.  The guest on the rear seat of an automobile owes a very limited degree of care.  He is not expected

to direct the driver, nor to keep a lookout. Dangers or threatened dangers known to him, he must warn the driver of, and for his failure to do so be chargeable with having proximately contributed to the accident, unless a reasonable person under all the circumstances would not have given the warning.

The defendant argues at length that the plaintiff offered no proof to show that his intestate used any care whatsoever in approaching this crossing, nothing to indicate whether he was then dead or alive, asleep or awake. The intestate was seen a few moments before the accident and a short distance from the crossing, seated on the rear seat of the closed automobile. If he had been asleep, or reading a book, or engrossed in talk with another than the driver, or in deep thought, he would not have been negligent because of this. Ordinary experience instances this as not infrequently the conduct of the ordinarily prudent person when riding as a guest on the rear seat of an automobile. No duty was upon the intestate to explain, excuse, or justify his course.

There is no presumption, the defendant says, that this intestate continued in life from the time he was seen alive just before the accident to the time of the collision. If it may be assumed as a self-evident result of human reason and experience that because this intestate was alive shortly before the collision the jury might have found that he was alive at the time of the collision, then no further proof of this fact is required. This presumption of fact will then supply the place of evidence in setting up something which must be overcome by proof. *Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 239, 33 Atl. 902; *Sturdevant's Appeal*, 71 Conn. 392, 400, 42 Atl. 70. Life will be presumed to continue for such period of time as will be reasonable under the circumstances, depending upon the length

of time intervening, the age, physical condition and all the surrounding circumstances. 2 Chamberlayne on Evidence, § 1034. In each case it is a presumption of fact subject to be controlled by whatever facts and circumstances may be in evidence. *Hyde Park* v. *Canton*, 130 Mass. 505, 509; 2 Chamberlayne on Evidence, § 1042. "If the lapse of time was comparatively short, it would, in ordinary cases, in the absence of any evidence to the contrary, be usually deemed satisfactory. *State* v. *Plym*, 43 Minn. 385, 388, 45 N. W. 848; *Chicago & Alton R. Co.* v. *Keegan*, 185 Ill. 70, 56 N. E. 1088. Since the lapse of time when Mr. Weidlich was last seen alive and the collision was so short, the jury were warranted, in the absence of other facts and circumstances to the contrary, in presuming that the life of the intestate continued to the time of the collision, and this presumption supplied the place of evidence.

There was evidence to go to the jury on the due care of the intestate. It arose out of the circumstances of the case and the necessary inference arising from these. "The nature of the accident . . . makes it improbable, according to common experience, that negligence on the plaintiff's side was a contributing cause." *Livermore* v. *Fitchburg R. Co.*, 163 Mass. 132, 133, 39 N. E. 789.

The charge is complained of in three particulars:

1. That "the existence of due care in any case may be inferred from the facts and circumstances in evidence." This, and the entire charge upon this subject, accords with the frequent expression of our court. The real criticism is in the court's having submitted to the jury the issue of due care, and we have already disposed of this as groundless. This criticism is based upon the requests to charge and not upon the charge as made, which is the basis of the errors specifically pressed in the brief of appellant.

2. That the one question presented by the plaintiff

was that the gates "were not maintained and operated with ordinary care and prudence at this time." Both the question of maintenance and operation, the appellant claims, were submitted to the jury, although only that of operation was raised in the pleadings; and that this must have been harmful since it was in evidence that the southeast gate was not in working condition. The trial court in its charge interpreted the complaint to limit the negligence charged to the operation and not to the maintenance of the gates, and expressly excluded from the consideration of the jury any negligence other than that complained of and especially that arising out of the condition of the gates. A reading of the charge fully satisfies us that the jury could not have failed to understand this as the single ground of negligence charged in connection with the gates. We think it entirely clear that the court used the terms "maintained and operated," in this portion of the charge complained of, in the sense of operated and without reference to the physical condition of the gates.

3. Error is predicated of the following instruction: "The plaintiff claims to have proved that the deceased was on the back seat of the automobile; that he was not driving and had no control over the operation of the car. If the jury finds this to be the fact, then he is in nowise chargeable with any failure of the driver of the automobile to use reasonable care. But before the plaintiff can recover in this action you must be satisfied that the deceased has omitted nothing in looking or listening for himself that a careful prudent man should do under similar circumstances." The defendant complains of this charge because there was no evidence that (a) the intestate was seated on the rear seat, (b) that he lived up to the standard of the conduct of the reasonable man, and (c) that the charge did not explain clearly the meaning of "imputed negligence."

Proof having been offered that the intestate was on the back seat at a time shortly before the accident, the presumption that he so continued would follow, in the absence of evidence to the contrary, just as the presumption of life continued. But in addition, as we understand the record, the plaintiff offered evidence from which the jury might have found this as a fact from the location of the body of the intestate after the accident and from the fact that the front seats were occupied before the accident by the driver and by a dog.

We have already said all that we deem necessary to indicate that the question of due care was properly left to the jury.

The subject of imputed negligence was presented to the jury in the manner approved of by our decisions and with clearness and sufficient completeness. *Sampson* v. *Wilson*, 89 Conn. 707, 96 Atl. 163.

There is no error.

In this opinion the other judges concurred.