JUNE *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. RAILROADS—NEGLIGENCE—CITY ORDINANCE—FAILURE TO SOUND WHISTLE PROHIBITED BY ORDINANCE NOT NEGLIGENCE.

In an action against a railway company for the death of plaintiff's decedent caused by a collision between an automobile in which he was a passenger and defendant's locomotive, negligence may not be predicated on failure to sound the whistle, where its use in the city was prohibited by the ordinance plaintiff invokes.[1]

2. SAME—RINGING OF BELL QUESTION FOR JURY.

Conflicting testimony as to whether or not the bell of the locomotive was ringing as it approached the crossing, *held,* sufficient to raise an issue of fact for the jury.[2]

3. SAME—NEGLIGENCE QUESTION FOR JURY.

Evidence of defendant's negligence under the city ordinance, *held,* sufficient to carry that issue to the jury.[3]

4. NEGLIGENCE—OF AUTOMOBILE DRIVER NOT IMPUTABLE TO MINOR PASSENGER.

The negligence of the driver of an automobile, which was struck by a locomotive at a railroad crossing, may not be imputed to a minor passenger, but his negligence may be predicated only upon what he himself did or did not do.[4]

5. RAILROADS — OVERCROWDING AUTOMOBILE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

That plaintiff's decedent, when killed at a railroad crossing, was one of eight persons riding in an automobile with seating capacity for only five, although a fact to be considered by the jury, was not, in itself, as a legal proposition, conclusive evidence of contributory negligence.[5]

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE OF INVITED GUEST QUESTION FOR JURY.

An invited passenger in an automobile is not absolved

---

[1]Railroads, 33 Cyc. p. 568; [2]Id., 33 Cyc. p. 1104; [3]Id., 33 Cyc. p. 1104; [4]Negligence, 29 Cyc. p. 549; [5]Railroads, 33 Cyc. p. 1113.
On imputed negligence of passenger riding in automobile driven by another precluding recovery against third person for injury, see note in L. R. A. 1915B, 953.

from the duty to exercise reasonable care for his own safety, and whether he has done so, under the circumstances shown, usually becomes a question of fact for the jury.[6]

7. RAILROADS—APPLICATION OF RULE AS TO REASONABLE CARE BY PASSENGER IN AUTOMOBILE.

Where a passenger was sitting in the back seat of an automobile with the curtains closed, when it was struck at a railroad crossing by a locomotive, the rule requiring him to use reasonable care for his own safety does not apply with the same degree of strictness as it would were he in the front seat with like opportunity to observe as, and in close communication with, the driver.[7]

Error to Genesee; Brennan (Fred W.), J. Submitted January 23, 1925. (Docket No. 62.) Decided October 1, 1925.

Case by William June, administrator of the estate of Ralph June, deceased, against the Grand Trunk Western Railway Company for the alleged negligent killing of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Neithercut & Neithercut* and *Guy W. Selby*, for appellant.

*H. R. Martin* (*W. A. Geer*, of counsel), for appellee.

STEERE, J. Plaintiff brought this suit in the circuit court of Genesee county to recover damages from defendant for the death of his son, Ralph June, a youth 19 years of age, who met his death on Saturday, November 4, 1922, in the collision of a Ford automobile in which he was riding with a train of defendant at the intersection of its track with Stevenson street in the city of Flint. A trial by jury resulted in a verdict in favor of defendant by direction of the

[6]Negligence, 29 Cyc. p. 551; p. 643; [7]Id., 29 Cyc. p. 551.

court.   A motion was made by plaintiff for a new trial, on the grounds that the verdict and judgment were clearly against the weight of evidence and the court erred in directing the verdict in defendant's favor.

On the evening of November 4, 1922, some friends of Philip Reed, who was 20 years of age that day and lived with his parents, met socially at his home.   It was decided that they take a little drive in his auto which was a Ford touring car.   The six then there started out and soon met deceased and Beatrice June who were expected at the gathering and picked them up for the ride, making eight occupants of the car, with four in each seat.   Philip Reed was driving, and sat on the left side of the front seat, in which were also three other young people.   A Miss Ancompaugh, then 16 years old, sat in the seat beside him, and next to her sat a young man named Sherman Bean, with Miss June sitting on his lap.   Ralph June, deceased, sat on the right-hand side of the rear seat.   Miss Eva Main sat next to him, and J. G. Reed sat next to her, with a Miss Opal Babbit on his lap.

Stevenson street runs approximately north and south, and crosses the Grand Trunk Western Railway nearly at right angles.   At this crossing there are five switch tracks to the north of the main through track and north of the north switch track is the Flint river.   The collision was on the main track.   The Ford car in which the 8 young people were riding was going south along Stevenson street approaching the crossing .from the north and had to cross the five switch tracks before it came upon the main track. It is 8 feet from the north rail of the main track to the south rail of the first switch track north of it; the next switch track north is 26.9 feet from the main track, the next 47.2, the next 112.2, and the last farthest north 147 feet from the main track.   De-

fendant's line after crossing Stevenson street at about right angles extends straight west for approximately 200 feet, then curves to the south for a short distance and swings back west again, making a somewhat S-shaped curve.    Stevenson street is shown upon the map introduced in evidence to be slightly over 50 feet in width.    It is practically level from the north switch south over the crossing.    The sidewalk on the west side is about four feet wide.    The driveway over the crossing is planked 18 feet in width east and west, the westerly end of the planking being 12 feet from the easterly side of the west walk, and about the same distance on the other side.

The automobile was struck on the right side near the center of the rear wheel by the engine of a train coming from the west on the main track.    In the collision plaintiff's decedent, Ralph June, was thrown against a telephone pole, causing his death.    Philip Reed testified that the train went down the track so that the engine stopped about 350 feet from the accident.    Plaintiff's witness Hunt testified, "the engine and a couple of the cars, maybe three of them, passed the street before it stopped and there were cars on Stevenson street when it stopped."

The negligence charged against defendant is failure to give notice of the approaching train by bell or whistle, excessive speed at the crossing in violation of an ordinance of the city of Flint, and leaving a string of freight cars on the switch track next adjacent to the main track extending so far west from Stevenson street as to shut off the view of an approaching eastbound train on the main track from an automobile as it approached the main track when going south on Stevenson street.

Negligence cannot be predicated on omitting to sound the locomotive whistle, as its use in the city is prohibited by the ordinance plaintiff invokes.    As to

ringing the bell of the locomotive, the engineer, fireman and others of the train crew testified positively that it was rung continuously as they approached the crossing.   A witness for defendant named Stanley who was walking south on Stevenson street toward the crossing and saw the accident testified that the automobile passed him near the first switch track going south and he heard voices of men and women singing in the auto as they passed, he then noticed a train coming from the west, saw. the reflection of its headlight play on the tracks and heard the bell ringing, but he couldn't do anything and just watched the auto which had passed him, until the collision.

Philip Reed testified that he was driving from 6 to 10 miles an hour and as he approached the crossing looked both to the right and left for trains or engines coming, that his wife (then Miss Ancompaugh) who sat beside him remarked "for a wonder there wasn't a train coming," he was listening in particular as he approached for a bell because of the crossing and heard none, there was no talking in the back seat or any singing as they approached the crossing.   Mrs. Reed gave testimony to like effect.   They were the only occupants of the auto called as witnesses although all survived except Ralph June.   Plaintiff's witness Hunt testified he was walking north towards the crossing along the west walk of Stevenson street and was about six rods from there when the accident happened.   He saw both the auto and train approaching the crossing.   While watching both of them he saw the reflection of the locomotive headlight from the approaching train, as it came around the curve, plainly visible across the street as it drew near, but he heard no bell or whistle.   There was sufficient conflicting testimony to raise an issue of fact on whether or not the bell was rung.

The city ordinance limits the speed of trains over crossings within its limits to 12 miles an hour.   De-

fendant's evidence is positive that the train was moving slowly through the city and that speed was not exceeded. Aside from Philip Reed's testimony that he was driving over the crossing at from 6 to 10 miles an hour and the front part of his auto was on the main track when he first saw the train which struck him, 200 feet away, plaintiff's only evidence of excessive speed is that of Hunt, who, when asked if the train was going very fast, said, "not over 15 miles an hour or 20; I don't know just how fast it was going. I know it wasn't so awful fast or awful slow."

We are of opinion that this record furnishes sufficient evidence in support of plaintiff's allegations of defendant's negligence to carry that issue to the jury, and there is abundant evidence to carry to the jury the question of the negligence of Philip Reed, the driver of the automobile; but his negligence cannot be imputed to plaintiff's decedent, Ralph June, who was a minor. His negligence can only be predicated upon what he himself did or did not do. *Hampel* v. *Railroad Co.*, 138 Mich. 1 (110 Am. St. Rep. 275); *Donlin* v. *Railway*, 198 Mich. 327; *Davis* v. *Railroad Co.*, 222 Mich. 239. Beyond the fact that when invited Ralph got into this automobile with seven others and sat down on the back seat, no one testifies as to what he did or said or saw or should have seen or done. It was shown that he came from a farm and had only resided in Flint about a month, working in one of the automobile factories. The car in which he was riding was driven by a friend who had lived in Flint for years and could be presumed well acquainted with its streets and their dangers. He admitted familiarity with the location of the crossing where the accident occurred, but said he did not think he had crossed it over 15 times. There is no evidence deceased had any knowledge of the fact that they were approaching a crossing. The approach was

planked and the speed of the auto was not changed as they approached it.

Briefly summed up, the undisputed facts shown are that after deceased got into the back seat of the car that evening it was driven at a speed of from 6 to 10 miles an hour without stop or change of gears until the accident happened.   He was sitting on the right-hand or west side of the car.   The view to the west along the east-bound main track on which the accident occurred was obstructed by a line of cars standing next adjacent to the east-bound main track but back some 10 or 15 feet from the west line of the west sidewalk of the street, some 26 feet or more from the westerly end of the planking across which the automobile was being driven.   Plaintiff's testimony shows there was no talking, outcry or warning of any nature given by any member of the party as they approached or crossed the crossing except Mrs. Reed's remark to the driver next to whom she sat that "for a wonder there is no train coming," and no evidence indicating Ralph heard her.

While the trial court undoubtedly took into consideration all the facts and circumstances of the case the only announcement of reason for directing a verdict for the defense was:

"I am inclined to think Mr. G— is right about that, that where one of a party of eight pile into an automobile and go across a railroad crossing as they did in this case, and an accident occurs, he is guilty of contributory negligence."

The number of young people who piled into this car beyond its seating capacity was a proper element of the case for the jury to consider as bearing on the question of deceased's lack of reasonable caution, but in itself it was not, as a legal proposition, conclusive evidence of contributory negligence.   It is not claimed that the weight of that number of people

in the car made it more difficult to drive nor that they in any way obstructed the view of the driver.   Both his and his wife's testimony is to the contrary.   He said only the string of freight cars north of the main track interfered with his view to the west, that he had his auto under control, was running only from 6 to 10 miles an hour and at 6 miles an hour he could stop "almost instantly."

It is the undoubted rule that the invited passenger is not absolved from the duty to exercise reasonable care for his own safety.   Whether he had done so under the circumstances shown and situation in which he is placed usually becomes a question of fact for the jury.   That proposition is fairly covered by Justice Weaver in *Bradley* v. *Railway Co.,* 191 Iowa, 1351 (183 N. W. 493).   In that case plaintiff was riding in an automobile as an invited guest sitting back of the driver and the plaintiff was injured in a collision of the auto with a train at a street crossing. The court there said in part:

"The question as to what is reasonable care in such emergency is peculiarly a question for the jury. Within reasonable limits the invited passenger in an automobile may reasonably and lawfully rely on the skill and judgment of the driver.   He cannot physically interfere with the driver's control of the car without peril of disaster.   He may, under proper circumstances, sound an alarm if he sees danger ahead of which the driver seems oblivious, but even then he must still to some extent place his reliance upon the driver to avoid it.   There is no rule of law which obliges him to forcibly seize the steering wheel and wrest it from the hands of the owner, or to jump from the rapidly moving vehicle to certain injury or death.   The appearance of danger of this character in almost every case comes in an instant of time, the peril is immediate, imminent, and if a collision occurs, the destruction is accomplished in a twinkling."

Deceased not only had no control or authority over the driver whose guest he was, but was sitting in the

back seat of the auto with closed curtains.   Under such circumstances the rule of reasonable care for his own safety does not apply with the same degree of strictness as it would were he in the front seat with like opportunity to observe as, and in close communication with, the driver.   In *Weidlich* v. *Railroad Co.*, 93 Conn. 438 (106 Atl. 323), it was said of a similar situation:

"The intestate must have exercised due care, but this is the care that may be reasonably inferred from the circumstances.   The guest on the rear seat of an automobile owes a very limited degree of care.   He is not expected to direct the driver, nor to keep a lookout.   Dangers or threatened dangers known to him, he must warn the driver of, and for his failure to do so be chargeable with having proximately contributed to the accident, unless a reasonable person under all the circumstances would not have given the warning.   *   *   *   The intestate was seen a few moments before the accident and a short distance from the crossing, seated on the rear seat of the closed automobile.   If he had been asleep, or reading a book, or in deep thought, he would not have been negligent because of this.   Ordinary experience instances this as not infrequently the conduct of the ordinarily prudent person when riding as a guest on the rear seat of an automobile."

In *Webber* v. *Billings*, 184 Mich. 119, where the testimony  tending to show that the passenger acquiesced or participated in overcrowding the car and recklessness of the driver was much stronger than here, this court held contributory negligence of the passenger was a question for the jury.   The authorities on this question will be found instructingly reviewed in Berry on Automobiles (4th Ed.), § 591 *et seq.*

The judgment is reversed, with costs to plaintiff, and a new trial granted.

McDonald, C. J., and Clark, Bird, Sharpe, Moore, Fellows, and Wiest, JJ., concurred.